DISTRICT OF COLUMBIA METRO-
POLITAN POLICE DEPART-
MENT, Appellant,

v.

FRATERNAL ORDER OF PO-
LICE/METROPOLITAN POLICE
DEPARTMENT LABOR COMMIT-
TEE, Appellee.

No. 08–CV–1590.

District of Columbia Court of Appeals.

Argued Feb. 2, 2010.

Decided June 24, 2010.

James C. McKay, Jr., Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellant.

Marc L. Wilhite, with whom James W. Pressler, Jr., Washington, DC, and Timothy D. Zessin, were on the brief, for appellee.

Bruce A. Fredrickson, with whom Cedar P. Carlton, Washington, DC, was on the brief, for the District of Columbia Public Employee Relations Board as amicus curiae.

Before KRAMER and OBERLY, Associate Judges, and PRYOR, Senior Judge.

OBERLY, Associate Judge:

The Fraternal Order of Police/Metropolitan Police Department Labor Committee ("FOP") obtained an arbitral award in favor of several of its members, pursuant to a collective bargaining agreement with the D.C. Metropolitan Police Department ("MPD"). MPD appealed the award to the District of Columbia Public Employee Relations Board ("PERB" or "the Board"), and the Board entered an order affirming the award. FOP then filed a motion in Superior Court to confirm the arbitration award under the D.C. Uniform Arbitration Act. D.C.Code §§ 16–4301 (2001), *et seq.* The Superior Court granted FOP's motion. We reverse. We hold that the Comprehensive Merit Personnel Act ("CMPA"), D.C.Code §§ 1–601.01, *et seq.* (2001 & 2009 Supp.), preempts FOP's motion to confirm the award under the Arbitration Act. Second, even if the CMPA does not have such preemptive effect, we hold that FOP had no right to proceed under the Arbitration Act because FOP failed to exhaust its remedies before the Board before seeking relief in Superior Court.

Before turning to the merits, we must resolve two threshold issues. First, there is a question of appellate jurisdiction. After the Superior Court granted FOP's motion to confirm the award, MPD filed a motion for reconsideration. Contrary to FOP's argument, we hold that the motion tolled MPD's time for noting its appeal of the order confirming the award. Second, we must address MPD's argument that the trial court lacked personal jurisdiction over it because FOP initiated its action without serving the Mayor of the District of Columbia or the Attorney General for the District of Columbia. We reject MPD's personal jurisdiction argument.

## I.

On December 12, 2003, MPD Officer Pablo Figueroa, along with four other offi-

cers, and on behalf of all similarly situated employees, brought a grievance against MPD, complaining that MPD assigned him the duty of Detective Sergeant without providing him an associated $595.00 per year, as allegedly required by law. The Chief of Police denied the grievance on December 29, 2003, and the dispute went to arbitration pursuant to the collective bargaining agreement between MPD and appellee, FOP. On June 28, 2004, the arbitrator ruled for FOP.

MPD then filed an Arbitration Review Request with the Board, seeking review of the arbitrator's award. On September 30, 2005, the Board denied the request and entered an order affirming the award. Although FOP asserts that MPD failed to comply with the terms of the award, FOP did not—as it could have, *see* 6–B DCMR § 560.1—petition the Board to enforce its order affirming the award. Nor did FOP file a complaint with the Board alleging that MPD's failure to honor the award constituted an unfair labor practice. *See* D.C.Code § 1–605.02(3) (2001); 6–B DCMR §§ 520.1, *et seq.*

Instead, on April 21, 2006, FOP filed in Superior Court a motion to confirm the award as a judgment under the District of Columbia Uniform Arbitration Act, D.C.Code §§ 16–4301, *et seq.* In the caption of its motion, FOP listed "Fraternal Order of Police, Metropolitan Police Department Labor Committee" as the "Plaintiff," and "District of Columbia/Metropolitan Police Department" as the "Defendant."

According to the affidavit of service, FOP caused service of its motion to confirm the award to be made on MPD at "MPD Headquarters, 300 Indiana Avenue (Fourth Floor), NW, Washington, DC 2000[1]." The process server left a copy of the summons, complaint (meaning, presumably, FOP's motion to confirm), and the initial order in the case with one Linda Tolson; the affidavit averred that Ms. Tolson "works with the defendant." MPD has never disputed that its headquarters are located at the address stated in the affidavit.

The District's Attorney General responded to FOP's motion and, on MPD's behalf, moved to dismiss. (For ease of reference, we will refer to the Attorney General's position as MPD's position.) MPD argued first that FOP failed to comply with Super. Ct. Civ. R. 4(j)(1), which prescribes the method for service "upon the District of Columbia, an officer or agency thereof, or upon other government entities subject to suit." Raising no objection to its capacity to be sued in its own name (more on this later), MPD argued that to "serve a District agency, a plaintiff must serve: (1) the Mayor; (2) the Attorney General; and (3) the agency." MPD did not question FOP's service of the agency, *i.e.*, itself, and did not contest that Ms. Tolson was authorized to accept service on MPD's behalf. Rather, MPD argued that service was ineffective, and thus personal jurisdiction was lacking, because FOP failed to serve the Mayor and the Attorney General. Second, MPD argued that FOP could not invoke the Arbitration Act because FOP "fail[ed] to exhaust its administrative remedies" and because "the CMPA places the authority to enforce PERB's orders exclusively with the PERB."

Judge Mary Terrell denied MPD's motion to dismiss and, on February 26, 2008, granted FOP's motion to confirm. On March 13, 2008, MPD sought reconsideration of the order granting FOP's motion to confirm. On October 31, 2008, Judge Natalia Combs Greene orally denied MPD's motion for reconsideration, reasoning that the motion was untimely and that she could not "get behind Judge Terrell's reasoning on the other issues." On December

1, 2008, MPD filed a notice of appeal, seeking review of the Superior Court's order granting FOP's motion to confirm the arbitration award and the Superior Court's order denying MPD's motion for reconsideration.

On February 6, 2009, MPD filed in this court a motion for summary reversal, largely repeating the arguments that it made in its pleadings before the Superior Court. With respect to its "personal jurisdiction" argument, MPD asserted: "FOP did not effect service of process on the District of Columbia. FOP served neither the Mayor nor the Attorney General nor their designees, but instead served Linda Tolson, described as a person who 'works with the defendant'—i.e., MPD." In response, FOP argued that it did not have to serve the District because it filed its motion against MPD, not the District; FOP also argued that it properly served MPD by delivering a copy of the summons and motion to confirm to Ms. Tolson, an agent of MPD. In reply, MPD complained for the first time that the *affidavit of service* did not sufficiently establish that Ms. Tolson had authority to accept service on behalf of MPD. MPD did not contest, and never has contested, that Ms. Tolson in fact possessed such authority.

We denied the motion for summary reversal because summary treatment is reserved for cases where "the trial court's ruling rests on a narrow and clear-cut issue of law," *Oliver T. Carr Mgmt., Inc. v. National Delicatessen, Inc.*, 397 A.2d 914, 915 (D.C.1979) (per curiam), and, as should become apparent, this case does not fit the bill. Our order denying the motion directed the parties to brief the basic assumption underlying MPD's personal jurisdiction argument—whether, given that FOP was proceeding against MPD, not the District, FOP was required to serve the District. In addition, we invited the Board to

file an amicus brief addressing the question whether FOP had a right to seek confirmation of the award in the Superior Court. The Board indeed filed a brief at the merits stage, siding in important respects with MPD. We thank the Board for its submission.

## II.

We first must decide whether we have jurisdiction to review the Superior Court's order granting FOP's motion to confirm the award. The timely filing of a notice of appeal is a jurisdictional requirement. *Patterson v. Sharek*, 924 A.2d 1005, 1009 (D.C.2007). As a general rule, "[t]he notice of appeal in a civil case must be filed with the Clerk of the Superior Court within 30 days after entry of the judgment or order from which the appeal is taken." D.C.App. R. 4(a)(1). The thirty-day period is tolled, however, by a Rule 59 motion to alter or amend the judgment or a Rule 60 motion for relief from final judgment, provided that such a motion, whether under Rule 59 or Rule 60, is filed within ten days after judgment is entered. D.C.App. R. 4(a)(4)(A)(iii) & (v); Super. Ct. Civ. R. 59(e), 60; *Nichols v. First Union Nat'l Bank*, 905 A.2d 268, 271–72 (D.C.2006). MPD filed its notice of appeal on December 1, 2008—thirty business days after the Superior Court denied its motion for reconsideration, but many months after the court entered the order granting FOP's motion to confirm. The question, therefore, is whether MPD's motion for reconsideration tolled MPD's time for noting its appeal.

The Superior Court entered the order granting FOP's motion to confirm the award on February 26, 2008, and served the order electronically on the parties on the next day. As explained above, to toll the time for noting an appeal, MPD had ten days from the date that the order was

entered to file a motion for reconsideration. Under Super. Ct. Civ. R. 6(a), we exclude from the count February 26—the day the order was entered. Ten days from February 27, excluding weekends, *id.*, takes us to March 11, two days before MPD filed the motion for reconsideration.

MPD is saved, however, by Super. Ct. Civ. R. 6(e), which adds three days to the count "[w]henever a party must ... act within a prescribed period after service and service is made," as it was in this case, "under Rule 5(b)(2)(B), (C), or (D)." We recognize that on its face, Rule 6(e) applies only where a party must act "within a prescribed period after *service*" (emphasis added), whereas to toll the time for noting an appeal a motion for reconsideration must be filed ten days from the date that judgment is "entered." *Nichols,* 905 A.2d at 271–72. But in *Wallace v. Warehouse Employees Union # 730,* 482 A.2d 801, 807 (D.C.1984), we held that notwithstanding the literal language of the rules, the mailing extension of Rule 6(e) applies to motions for a new trial under Rule 59(e), at least where, as here, "judgment is rendered outside the presence of the parties or counsel." *But see Albright v. Virtue,* 273 F.3d 564, 571 (3d Cir.2001) ("[e]very" federal court interpreting the identical federal rules has rejected "the argument that Rule 6(e) extends the Rule 59(e) time limit by three days"); 4B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1171, pp. 586–88 (3d ed. 2002) ("three days will be added under Rule 6(e) only when the period in question is measured from the service of a notice or other paper; the subdivision is inapplicable when some other act or event commences the time period, such as the entry of a judgment").

FOP argued in the trial court that "the advent of electronic filing" changes things. The argument is not without some appeal. *Wallace's* gloss on the "literal" text of the rules was driven by the concern that "[i]t would not be reasonable to require that when a case is taken under advisement the parties must on every day thereafter check the records of court to find if action has been taken." 482 A.2d at 806 (quotation marks omitted). It is not obvious that this policy concern applies where service is made electronically.

Having said that, we believe that it is better to follow *Wallace* in this case than to create a rule under which the applicability of Rule 6(e) turns on whether service is made electronically or by ordinary mail. To begin, failing to extend *Wallace* to cases where service is made electronically would undermine *Wallace's* bright-line rule under which the time for noting an appeal is "precisely ascertainable"—Rule 6(e) applies if judgment was entered outside the presence of the parties. 482 A.2d at 807. Detracting from this bright-line rule alone is good reason to extend *Wallace* to e-service cases. "Clarity is to be desired in any statute, but in matters of jurisdiction it is especially important. Otherwise the courts and the parties must expend great energy, not on the merits of dispute settlement, but on simply deciding whether a court has the power to hear a case." *United States v. Sisson,* 399 U.S. 267, 307, 90 S.Ct. 2117, 26 L.Ed.2d .608 (1970); *see also Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343, 2354, 171 L.Ed.2d 299 (2008) (Roberts, C.J., concurring in part) (" 'The tendency of the law must always be to narrow the field of uncertainty' ") (quoting O. HOLMES, THE COMMON LAW 101 (M. Howe ed. 1963)). Further, *Wallace's* generous holding has not caused the sky to fall, so we see no harm in following it here. What is more, there are reliance interests at stake; MPD had good reason to believe that, after twenty-six years, *Wallace* was settled law and that it thus could count on Rule 6(e).

To sum up: MPD's motion for reconsideration tolled its time for noting an appeal of the order granting FOP's motion to confirm. And because MPD timely appealed the denial of the motion for reconsideration, we have jurisdiction to review the Superior Court's order granting FOP's motion to confirm.

### III.

### A.

We turn next to MPD's "personal jurisdiction" argument. "As one would reasonably infer from the fact that the Rules list separately the defenses of lack of personal jurisdiction and insufficiency of service of process, these two defenses, while often related, are not identical." *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir.1990); *see also Henderson v. United States*, 517 U.S. 654, 671, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) ("Service of process . . . is properly regarded as a matter discrete from a court's jurisdiction to adjudicate a controversy . . . against a particular individual or entity."); 4 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1063, p. 327 (3d ed. 2002) ("Strictly speaking, Rule 4 does not deal directly with jurisdiction . . . over the person or property."). "Questions of personal jurisdiction go to whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant." *Santos*, 902 F.2d at 1095 (quotation marks omitted); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("Personal jurisdiction . . . represents a restriction on judicial power as a matter of individual liberty.") (quotation marks and editing omitted); *see generally Etchebarne–Bourdin v. Radice*, 982 A.2d 752 (D.C.2009). In contrast, the "essential purpose" of the service of process requirement "is auxiliary"; "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson*, 517 U.S. at 671–72, 116 S.Ct. 1638; *see also Santos*, 902 F.2d at 1095 ("questions of sufficiency of service concern the manner in which service has been made and not the court's power to adjudicate defendant's rights and liabilities") (quotation marks and editing omitted). A decision to grant or deny a motion to dismiss for insufficiency of process is committed to the trial court's "sound discretion." *National Paralegal Inst., Inc. v. Bernstein*, 498 A.2d 560, 562 (D.C.1985).

In this case, although MPD couches its argument in terms of personal jurisdiction, MPD's actual objection is to the manner in which FOP effected service. Thus, we do not understand MPD to be arguing that it lacks "minimum contacts" with the District, such that the "maintenance of [FOP's] suit" in the District would "offend traditional notions of fair play and substantial justice." *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 269 (D.C. 2001) (quotation marks omitted). Indeed, it is hard to imagine a jurisdiction with which MPD has greater contacts than with the District. So the essence of MPD's claim is more modest: MPD is saying that the District's courts cannot *exercise* personal jurisdiction over MPD because FOP failed to effect service of process correctly.

MPD cannot show that the Superior Court abused its "sound discretion," *National Paralegal Inst., Inc.*, 498 A.2d at 562, in denying MPD's insufficiency of process defense. It is true that under Super. Ct. Civ. R. 4(j)(1), service "upon the District of Columbia" requires service upon both the Mayor and the Attorney General.

*See Thompson v. District of Columbia*, 863 A.2d 814, 815–16 (D.C.2004) (affirming grant of District's motion to dismiss "for insufficiency of service of process" where appellant sued, among others, the District of Columbia, but failed to serve the Mayor); *Dorsey v. District of Columbia*, 839 A.2d 667, 667–68 (D.C.2003) (affirming grant of District's motion to dismiss where plaintiff sued the District of Columbia, but failed to serve the Corporation Counsel). Recall, however, that in its motion to confirm the arbitrator's award, FOP named as a respondent not the District, but MPD as a separate, suable entity. And because MPD did not object to that characterization, we do not see why FOP's failure to serve the District is of any moment.

Importantly (and surprisingly), MPD has made no serious effort to persuade us otherwise. In response to our order directing briefing on the issue whether FOP had to serve the District, MPD dropped a footnote in its merits brief, writing that it "disagreed with [the] premise" of our question. As MPD saw things, FOP had no right to maintain an action in Superior Court to enforce the award because FOP had to petition PERB for relief first. "Moreover," MPD wrote, ours was a "purely hypothetical question" because, echoing the argument that it made for the first time in its reply brief on the summary reversal motion, even if FOP could proceed against MPD, FOP failed to effect service properly on MPD.

Perceiving no reason why Rule 4(j)(1) should apply—and MPD electing not to debate the point—we proceed to analyze the service issue under Super. Ct. Civ. R. 4(j)(2), which governs service upon "governmental organizations subject to suit," other than the District and the United States. And that is where MPD's argument fails. Rule 4(j)(2) does not require service upon either the Mayor of the District of Columbia or upon the Attorney General. Rather, that rule says that service may be effected by, among other methods, "delivering a copy of the summons, complaint and initial order" to the "chief executive officer" of the entity being sued. MPD does not claim that only its chief executive—whom MPD calls the Chief of Police—can accept service on MPD's behalf. Instead, MPD claims that FOP's service affidavit does not meet the requirements of Super. Ct. Civ. R. 4 (*l*)(1) (the rule setting forth what an affidavit of service must contain to prove proper service) because the affidavit states merely that Linda Tolson, the person who accepted service at MPD headquarters, "works with" MPD.

■ Again, the trouble for MPD is that its argument comes too late. If MPD had voiced its concern with Ms. Tolson in Superior Court, it might have prevailed. *See, e.g., Leichtman v. Koons*, 527 A.2d 745, 747 n. 4 (D.C.1987) ("An agent must have actual authority for [the purpose of receiving service of process]; an office employee with authority to receive business communications and mail does not, by virtue of his or her position, have authority to receive process under the Superior Court Rules."). But MPD first raised its objections to Ms. Tolson's ability to accept service when the case reached this court, and even then MPD waited until its reply in support of its motion for summary reversal to argue that point. By failing to raise the claim in Superior Court, MPD has waived it, Super. Ct. Civ. R. 12(h)(1), and this precludes our review. Waiver aside, we hardly can say that the Superior Court abused its "sound discretion," *National Paralegal Inst., Inc.*, 498 A.2d at 562, by failing to consider a defense that MPD did not raise, *Lindsey v. Prillman*, 921 A.2d 782, 786 (D.C.2007) ("we cannot fault the trial judge for failing to consider" an argu-

ment not raised in the trial court), or at best raised too perfunctorily to merit review. *See Wagner v. Georgetown Univ. Med. Ctr.,* 768 A.2d 546, 554 n. 9 (D.C. 2001) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (editing omitted) (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990)).

## B.

Now a few words about an issue that MPD alludes to only in passing—*i.e.,* whether MPD may be sued in its name. "Cases in this jurisdiction have consistently found that bodies within the District of Columbia government are not suable as separate entities." *Simmons v. District of Columbia Armory Bd.,* 656 A.2d 1155, 1156 (D.C.1995) (per curiam) (quotation marks omitted). It is settled that MPD is one such body—it "is not a separate suable entity" because it is a noncorporate department within the District government and no statutory provision authorizes suit against it. *McRae v. Olive,* 368 F.Supp.2d 91, 94 (D.D.C.2005); *accord Heenan v. Leo,* 525 F.Supp.2d 110, 112 (D.D.C.2007); *Aleotti v. Baars,* 896 F.Supp. 1, 6 (D.D.C. 1995), *aff'd,* 107 F.3d 922 (D.C.Cir.1996). FOP suggests that this case is different because it haled MPD into court via a motion to confirm an arbitration award as opposed to through a "traditional" complaint. We do not see why this distinction has any significance, but because we reject MPD's suability argument on other grounds, we need not decide the issue.

As stated above, in Superior Court, MPD did not seek dismissal on the ground that it is not suable in its name. (MPD suggests briefly that its suability argument was implicit in its "personal jurisdiction" argument, but that is not good enough. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (per curiam).) In fact, MPD first mentioned the suability issue in its motion for summary reversal in this court; even then, however, MPD argued that we were not required to reach the issue because its other arguments were "sufficient bas[e]s for reversal." After FOP protested that MPD had not raised the suable-entity claim in the Superior Court, MPD, citing no authority, replied that it "basically" was arguing "that the Superior Court lack[ed] subject matter jurisdiction" over FOP's motion. Again, however, MPD insisted that we did not need to address the issue. Then, in its merits briefs in this court, MPD continued to treat the issue as academic: although MPD asserted parenthetically that it cannot be sued, it sought reversal based on its "personal jurisdiction" argument, as well as upon its assertion that FOP had no right to proceed under the Arbitration Act. Likewise, at oral argument, MPD surprisingly was willing, indeed eager, to assume for the purposes of argument that it was suable in its name.

Although MPD does not dwell on the topic, if—as MPD represented in its briefing on its summary reversal motion—its capacity to be sued in its name implicates our, or the Superior Court's, subject matter jurisdiction, we cannot glide over the issue. *See Rolinski v. Lewis,* 828 A.2d 739, 742 (D.C.2003) (en banc). True, a court need not get entangled in a thorny question of subject matter jurisdiction if it

can more easily dismiss a case on personal jurisdiction or other procedural grounds. *Davis v. Davis,* 957 A.2d 576, 581–82 (D.C. 2008). But that approach, as we have explained, is not an option in this case.

We note initially that MPD's argument that, by questioning its capacity to be sued, MPD "basically" was raising an objection to the court's subject matter jurisdiction appears to be a newfangled position for the District's lawyers. In the past, Corporation Counsel, the predecessor of the Attorney General, has argued that naming a "nonsuable" entity as a defendant subjects a suit to dismissal for failure to state a claim upon which relief can be granted, *see Akins v. District of Columbia,* 526 A.2d 933, 935 & n. 3 (D.C.1987); *Jenkins v. Government of District of Columbia,* 1996 WL 440551, at *1 & n. 2 (D.D.C. July 26, 1996), or for lack of personal jurisdiction, *see Parker v. District of Columbia,* 216 F.R.D. 128, 129 (D.D.C.2002); *Roth v. District of Columbia Courts,* 160 F.Supp.2d 104, 105, 107 (D.D.C.2001); *Kundrat v. District of Columbia,* 106 F.Supp.2d 1, 2, 4 (D.D.C.2000).

▮▮▮▮ Like the District's lawyers previously, we believe that the issue whether MPD can be sued in its name does not go to subject matter jurisdiction. "Subject matter jurisdiction concerns the court's authority to adjudicate the type of controversy presented by the case under consideration." *Davis & Assocs. v. Williams,* 892 A.2d 1144, 1148 (D.C.2006) (quotation marks omitted). The controversy presented for decision in this case is whether FOP had a right to proceed in Superior Court under the Arbitration Act. The District's courts unquestionably have authority to consider this question.

Whether courts can award relief against MPD as a named respondent to FOP's motion is a separate matter, but it is important to understand why. For explanation, we look, as we did in our frequently cited case on the topic, *see Braxton v. National Capital Hous. Auth.,* 396 A.2d 215, 216–17 (D.C.1978) (per curiam), to the Supreme Court's decision in *Blackmar v. Guerre,* 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952). In *Blackmar,* the Court held that the United States Civil Service Commission could not be "sued *eo nomine*"—that is, "[b]y or in that name," BLACK'S LAW DICTIONARY (8th ed. 2004)—because Congress had not authorized such a suit against the Commission as a separate entity. 342 U.S. at 515, 72 S.Ct. 410. Thus, the flaw with a suit (or motion) seeking relief against MPD is that MPD is not the proper defendant (or respondent) to place in the caption of such an action; the District is. The defect, however, is not that the Superior Court lacks the power to decide a case where MPD is named. In other words, the point is not that MPD's activities are immune from review, but rather that to obtain relief against MPD, one must name the District. To that end, it is telling that properly captioned claims against the District for MPD's alleged misdeeds are a dime a dozen. For one example, one need look no further than *Abate v. District of Columbia,* 659 F.Supp.2d 156, 157 (D.D.C.2009), a case that involves "efforts by other MPD officers to contest the nonpayment of detective sergeant compensation."

▮▮▮▮ MPD's objection to its capacity to be sued in its name therefore does not implicate our or the Superior Court's subject matter jurisdiction, which in turn means that we are not obligated to decide the issue. In our view, an objection to a District agency's capacity to be sued in its name should be brought in a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. This is because the argument in such a case is that even if all the allegations in a

complaint seeking relief against a District agency such as MPD are accepted as true, that complaint is legally insufficient because it seeks relief that, on the facts alleged, is unavailable. *See Murray v. Wells Fargo Home Mortgage,* 953 A.2d 308, 316 (D.C.2008). It follows that we can treat the suability claim as waived. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 507, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[T]he objection that a complaint 'fails to state a claim upon which relief can be granted,' Rule 12(b)(6), may not be asserted post-trial. Under Rule 12(h)(2), that objection endures up to, but not beyond, trial on the merits."); *see also Ashton Gen. P'ship, Inc. v. Federal Data Corp.,* 682 A.2d 629, 632 n. 2 (D.C.1996) (Rule 12(b)(6) challenge may be made "as late as trial on the merits"). The same result holds even if the suable entity argument is understood as a challenge to the court's personal jurisdiction on the theory—we believe imprecise—that such a challenge questions the trial court's jurisdiction over the "person" of MPD. An objection to the court's personal jurisdiction is waivable, Super. Ct. Civ. R. 12(h)(1) and, in fact, has been waived by MPD.

■ Finally, our conclusion remains the same even if one thinks of the nonsuable-entity defense as being an argument that MPD enjoys sovereign immunity from suit. (One could read *Keifer & Keifer v. Reconstruction Fin. Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939), the case upon which *Blackmar* relied, to support that view.) As stated above, that is not how we understand MPD's argument, but in the end, we need not decide whether to so characterize it. Although a sovereign immunity defense "sufficiently partakes of the nature of a jurisdictional bar that it may be raised by the State for the first time on appeal," the defense may be waived, and it is not "jurisdictional in the

sense that it must be raised and decided by [a court] on its own motion." *Patsy v. Board of Regents of Fla.,* 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (quotation marks omitted). MPD did not focus on the suability issue in its briefing or at oral argument and has insisted that we need not address the question. Therefore, even if MPD's capacity to be sued has jurisdictional features, we are not obligated to decide that question and instead "deem it appropriate to address the issue that was raised and decided below and vigorously pressed in this [c]ourt," *id.*— FOP's ability to proceed under the Arbitration Act.

## IV.

Whether a prevailing party in a CMPA-sanctioned arbitration may enforce an award under the Arbitration Act is an important question of first impression in this court, and one that has divided the judges of the Superior Court. *Compare, e.g., Fraternal Order of Police, Metropolitan Police Dep't Labor Committee v. District of Columbia/Metropolitan Police Dep't,* No. 2006 CA 3077 B (D.C.Super.Ct. Feb. 26, 2008) (Terrell, J.) (decision on review in this case, granting FOP's motion to confirm award), *with Department of Corrections Fraternal Order v. District of Columbia Dep't of Corrections,* No. 2007 CA 6533 (D.C.Super.Ct. Sept. 16, 2008) (Motley, J.) (dismissing for lack of jurisdiction motion to confirm award that was previously affirmed by PERB), *appeal dismissed as moot,* No. 08–CV–1244 (D.C. Dec. 22, 2009). We now hold that the Superior Court erred in granting FOP's motion to confirm the award under the Arbitration Act because FOP's exclusive avenue for relief is provided by the CMPA. Even if the CMPA does not preclude FOP's suit, the Superior Court erred because FOP failed to exhaust its adminis-

trative remedies prior to seeking relief in Superior Court.

## A.

■ At the outset, we note that the Board has submitted a brief in this case, which raises the question of how much deference, if any, the Board's analysis merits. Ordinarily, "we defer to the Board's interpretation of the CMPA unless the interpretation is unreasonable in light of the prevailing law or inconsistent with the statute or is plainly erroneous." *Fraternal Order of Police v. District of Columbia Pub. Employee Relations Bd.,* 973 A.2d 174, 176 (D.C.2009) (quotation marks omitted). But in some respects, the Board's interpretation in this case relates to the scope of its own authority, and we have questioned whether deference is appropriate under such circumstances. *See Blagden Alley Ass'n v. District of Columbia Zoning Comm'n,* 590 A.2d 139, 142 n. 6 (D.C.1991). *But see Mississippi Power & Light Co. v. Mississippi,* 487 U.S. 354, 381, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988) (Scalia, J., concurring) ("it is settled law that the rule of deference applies even to an agency's interpretation of its own statutory authority") (citing cases). Moreover, whether FOP has a right to invoke the Arbitration Act is a purely legal question that calls for an interpretation of the CMPA and an application of court-created exhaustion requirements, and it is not clear that the Board is entitled to deference on these legal questions. *See Washington Gas Light Co. v. Public Serv. Comm'n,* 982 A.2d 691, 703 (D.C.2009) (holding that agency was not entitled to deference on question whether this court had power to review agency's decision; issue was whether exhaustion requirements in a certain act were jurisdictional). We need not settle on a standard of deference, however, because our analysis is not inconsistent with the Board's in any event.

## B.

■ We now turn to the question whether the CMPA precludes FOP from obtaining relief under the Arbitration Act. We often have recognized that the CMPA provides the exclusive remedy for many (though not all) grievances suffered by District government employees, *see, e.g., Baker v. District of Columbia,* 785 A.2d 696, 697 (D.C.2001); *Stockard v. Moss,* 706 A.2d 561, 564–65 (D.C.1997); *District of Columbia v. Thompson,* 593 A.2d 621, 623–24 (D.C.1991); *Newman v. District of Columbia,* 518 A.2d 698, 705 (D.C.1986), and that the courts lack subject matter jurisdiction to award relief where the CMPA's remedies are exclusive. *See Feaster v. Vance,* 832 A.2d 1277, 1281–86 (D.C.2003); *King v. Kidd,* 640 A.2d 656, 661–63 (D.C. 1993); *Thompson,* 593 A.2d at 636. Following those cases, we hold that the Superior Court erred in granting FOP's motion to confirm because FOP's exclusive remedies are found in the CMPA.

*Thompson* well illustrates the CMPA's broad preemptive sweep. In that case, Patricia Thompson, a District government employee, won a common law tort action in Superior Court against the District and her supervisor. 593 A.2d at 623. Among other things, Thompson alleged that the supervisor wrongly accused her of poor work performance, insubordination, and rudeness to staff and patrons. *Id.* at 625. We reversed Thompson's jury award, holding that the CMPA "preempt[ed], and thus preclude[d]" her common law tort suit, and that her "exclusive" remedy was found in the CMPA. *Id.* at 623–24. We explained: "the Council plainly intended [the] CMPA to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions—with a reviewing role for the

courts as a last resort, not a supplementary role for the courts as an alternative forum." *Id.* at 634 (quotation marks omitted).

*Thompson* emphasized that when the D.C. Council enacted the CMPA, it legislated against the backdrop of a personnel system that was " 'disarray' and 'chaos' "; the CMPA was spurred by "an 'inefficient hodge-podge system that ignored the rudimentary merit rules' and 'awkwardly meshed' the District personnel apparatus with the federal personnel system." *Thompson,* 593 A.2d at 632 (citation and internal editing omitted). The Council intended to replace the then-existing " 'incredibly inefficient, often counter productive' " regime with a " 'modern, flexible, comprehensive city-wide system of public personnel administration' that would provide 'for the efficient administration of the District personnel system and establish impartial and independent administrative procedures for resolving employee grievances.' " *Id.* at 632–33 (citations omitted). Permitting Thompson to seek relief outside of the CMPA, we held, would frustrate the Act's aim to achieve order and efficiency.

We also explained that the CMPA's text reflected its broad purposes and likewise evidenced the Council's intent to preclude employees from bringing common law actions such as Thompson's. Thus, we noted that the CMPA created for District employees "comprehensive rights to notice, hearing, appeal, and judicial review of performance ratings and adverse personnel actions under CMPA and under any CMPA-endorsed union contract." *Thompson,* 593 A.2d at 628–29; *see id.* at 625–27 (describing the statutory remedies made available to Thompson by the CMPA). Importantly, we so held even though we acknowledged that—in contrast to a provision in the CMPA stating that some of the

Act's remedies were exclusive and preemptive of other remedies—the CMPA did not explicitly provide that the employee performance review remedies were exclusive or that they precluded common law claims. *Id.* at 629.

*Thompson* drew upon the Supreme Court's analysis in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), of the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. 95–454, 92 Stat. 1111, *et seq.,* (codified, as amended, in various sections of 5 U.S.C.). Like the CMPA, the CSRA replaced the then-existing "patchwork system" governing civil service administration "with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445, 108 S.Ct. 668. The government employee in *Fausto* alleged that his dismissal violated regulations issued by his employing agency. Because by virtue of his status the employee had no right to judicial or administrative review under the CSRA, the employee filed a federal suit under the Back Pay Act. *See id.* at 441–43 & n. 2, 108 S.Ct. 668. Even though the CSRA (like the CMPA) did not contain an explicit preclusion provision, the Supreme Court held that the CSRA precluded the employee's action. As the Court summarized its holding: "The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act." *Id.* at 455, 108 S.Ct. 668.

As in *Thompson* (and similarly to *Fausto* ), the text of the CMPA, as informed by

the purposes it seeks to achieve and the history of which that Act was borne, shows that the CMPA precludes FOP from obtaining relief under the Arbitration Act. As a result, a party in FOP's shoes must seek relief before PERB under the CMPA, not in the courts under the Arbitration Act. As in *Thompson* and *Fausto,* there is no provision on point so stating, but that does not end our analysis. *See Thompson,* 593 A.2d at 632 (" 'Whether a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.' ") (editing omitted) (quoting *Block v. Community Nutrition Inst.,* 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984)).

The first textual clue supporting our holding comes from D.C.Code § 1–605.02(16), which states that the Board has the power to "[s]eek appropriate judicial process to enforce its orders and otherwise carry out its authority." Specifically, under the CMPA, "[i]n cases of contumacy by any party or other delay or impediment of any character, the Board may seek any and all such judicial process or relief as it deems necessary to enforce and otherwise carry out its powers, duties and authority." *Id.* The CMPA has no parallel provision that entrusts parties appearing before it with comparable enforcement authority or that otherwise evidences an intent to give these parties a role in the implementation of Board orders generally, or arbitration awards arising out of the CMPA specifically.

To the contrary, the portions of the CMPA that are directed to parties shepherd those parties to PERB, not the courts. Consider, for instance, our second textual clue, D.C.Code § 1–605.02(6), which states that the Board has the power

to decide "appeals from arbitration awards pursuant to a grievance procedure" and that PERB review is "the exclusive method for reviewing the decision of an arbitrator concerning a matter properly subject to the jurisdiction of the Board, notwithstanding provisions of §§ 16–4301 to 16–4319," that is, the provisions of the Arbitration Act. *Id.* The exclusivity provision of § 1–605.02(6), of course, is not dispositive of the issue before us because that provision concerns appeal, not enforcement. Fairly read, however, this section does suggest that the Council intended the Board, not the courts, to be the forum for proceedings after an award has been entered. Moreover, relief for MPD's alleged failure to abide by the Board's order affirming the award was available to FOP under 6–B DCMR § 560.1, which states that "[i]f any [party] fails to comply with the Board's decision within the time period specified in [6–B DCMR § 559.1] [*i.e.,* within 30 days after the Board issues its Decision and Order, unless otherwise specified], the prevailing party may petition the Board to enforce the order."

Furthermore, the provision of the CMPA giving the Board the powers to "[d]ecide whether unfair labor practices have been committed and [to] issue an appropriate remedial order," D.C.Code § 1–605.02(3), takes care of the argument that the CMPA is not comprehensive because an arbitral award is not in itself a Board "order" capable of enforcement under § 1–605.02(16). *See also* 6–B DCMR §§ 520.1, *et seq.* (describing procedures applicable to unfair labor practice cases). The Board notes that it "repeatedly" has held that " 'when a party simply refuses or fails to implement an award or negotiated agreement where no dispute exists over its terms, such conduct constitutes a failure to bargain in good faith and, thereby, an unfair labor practice under the CMPA.' " (Board's brief at 7–8, quoting *Internation-*

al Bhd. of Police Officers, Local 446, Nat'l Ass'n of Gov't Employees v. District of Columbia, 47 D.C.Reg. 7184, 7187, Slip Op. No. 622, PERB Case No. 99–U–30 (2000)). Although this court apparently has not decided this issue, the Board's position is consistent with federal law. See American Fed'n of Gov't Employees, AFL–CIO, Local 446 v. Nicholson, 475 F.3d 341, 345 (D.C.Cir.2007) (holding that it is an unfair labor practice "for a federal agency to fail to comply with a valid arbitration award"). We thus agree, and FOP does not dispute, that FOP could have fought MPD's alleged refusal to comply with the award by filing an unfair labor practice complaint with the Board under § 1–605.02(3). This further persuades us that the CMPA is comprehensive and, therefore, preclusive.

As for policy grounds and the extent to which preclusion serves the purposes of the CMPA, the case for preemption is stronger in this case than in Thompson. Thompson held that the CMPA precluded an employee's common law remedies even though the employee never sought or availed herself of relief under the CMPA. In contrast, the award that FOP seeks to confirm under the Arbitration Act is the product of comprehensive CMPA-established grievance and collective bargaining procedures. See Thompson, 593 A.2d at 625. Because the CMPA is the source of the award, it is natural for the CMPA to provide the avenue for its enforcement; a contrary reading would revive the "disjointed, decentralized personnel system" that the CMPA was "designed to replace." Id. at 632 (quotation marks omitted). The view that the Council intended the CMPA to govern the entry of the award and, if necessary, its appeal, only to have enforcement proceed on a parallel, potentially duplicative track under the Arbitration Act is too unlikely for us to accept.

Finally, it is no answer to argue, as FOP implicitly did by attempting to bypass PERB, that the Arbitration Act enables FOP to protect its interests more efficiently or effectively than the CMPA. To begin, FOP has not suggested, much less shown, that its remedies under the CMPA are inadequate or that the Board does not do enough to protect FOP. Moreover, " 'it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention.' " Fornaro v. James, 416 F.3d 63, 67 (D.C.Cir.2005) (Roberts, J.) (quoting Spagnola v. Mathis, 859 F.2d 223, 227 (D.C.Cir.1988) (en banc)).

## C.

Even if the CMPA does not preclude FOP's attempt to confirm the award under the Arbitration Act, the order granting FOP's motion to confirm the award must be reversed because FOP failed to exhaust its administrative remedies before coming to Superior Court. As described above, at least two administrative remedies were available to FOP to protest MPD's alleged "contumacy," D.C.Code § 1–605.02(16), with respect to the award. First, FOP could have petitioned the Board to enforce its order affirming the award. D.C.Code § 1–605.02(16); 6–B DCMR § 560.1. Second, FOP could have challenged MPD's alleged resistance by filing an unfair labor practice complaint. D.C.Code § 1–605.02(3); 6–B DCMR §§ 520.1, et seq. FOP's failure to avail itself of either remedy is an independent reason that its action fails. See Newman, 518 A.2d at 706 (Rogers, J., concurring in part and dissenting in part) ("Although related, preemption and exhaustion issues are analytically distinct."), id. at 708 ("The survival of a common law cause of action . . . does not also decide the question whether administrative remedies must be exhausted.").

 Exhaustion "applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course." *Davis & Assocs.*, 892 A.2d at 1148 & n. 5 (quotation marks omitted). As we recently explained, "there are several 'distinct legal concepts' that go by the name of 'exhaustion,'" and it is important to distinguish among them. *Washington Gas Light Co.*, 982 A.2d at 700–01. It also is important to appreciate that "[a]lthough the doctrines often overlap, the doctrine of primary jurisdiction should not be confused," as it was by the parties, and especially MPD, in this case, "with the doctrine of exhaustion of administrative remedies." *Drayton v. Poretsky Mgmt., Inc.*, 462 A.2d 1115, 1118 (D.C.1983) (citing *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 62–63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)); *see also Reiter v. Cooper*, 507 U.S. 258, 268–69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); 2 Richard J. Pierce, Jr., Administrative Law Treatise § 14.1, at 1162 (5th ed. 2010).

 The exhaustion requirement involved in this case is judge-made and applies "whenever administrative remedies are available." *Washington Gas Light Co.*, 982 A.2d at 701. Exhaustion "serves several important policy functions: it prevents litigants from evading the agency's authority, thereby safeguarding the intent of the legislature in creating the agency; it protects agency authority by ensuring that the agency has the opportunity to apply its expertise and exercise its discretion; it aids judicial review by creating a record and promotes judicial economy by channeling claims to the decision maker of the legislature's choice." *Id.* (footnote calls omitted). The doctrine is "derived from equity," and thus "allows for some flexibility," but only in "exceptional circumstances." *Id.*

The policies behind the exhaustion doctrine are fully applicable in this case. Requiring FOP to air its issues before the Board would help to create a record with respect to how (if at all) MPD skirted its obligations under the award. Exhaustion also would permit the Board—which enjoys greater familiarity with both sides to and the history of the dispute than the courts—to decide how best to "apply its expertise and exercise its discretion," *see Washington Gas Light Co.*, 982 A.2d at 701, which in turn would aid judicial review of any action that the Board decided to take.

Perhaps most importantly, failing to require exhaustion risks encouraging unnecessary litigation. For a prime example of potential inefficiencies, one need look no farther than *Department of Corrections Fraternal Order v. District of Columbia Dep't of Corrections*, No. 2007 CA 6533 (D.C.Super.Ct. Sept. 16, 2008) (Motley, J.). In that case, as in this one, a prevailing party in a CMPA-sanctioned arbitration moved to confirm in Superior Court an award that was affirmed by the Board. While the motion to confirm was pending, PERB filed its own enforcement action before a different Superior Court judge. The judge hearing the original motion to confirm dismissed that motion, and given the pendency of the PERB enforcement proceeding, we dismissed the subsequent appeal as moot. *See* No. 08–CV–1244 (D.C. Dec. 22, 2009) (unpublished order). Holding that FOP has an independent right to proceed under the Arbitration Act would risk opening the door to similar duplicative litigation. This is precisely the sort of result that the exhaustion requirement is designed to avoid.

 FOP does not dispute that it could have gone to PERB, but argues that it did not have to. We disagree. To be sure, as FOP argues, the doctrine of ex-

haustion is "simply a rule of judicial administration rather than a jurisdictional requirement." *Burton v. District of Columbia,* 835 A.2d 1076, 1079 (D.C.2003) (quotation marks omitted). Accordingly, in limited circumstances, "a court of equity is justified in considering the merits of an administrative action, notwithstanding the petitioner's failure to exhaust administrative remedies." *Id.* (quotation marks omitted). But to avail itself of the equitable exception, a petitioner must "make a strong showing of compelling circumstances justifying equity's intervention." *Id.* at 1079–80 (quotation marks omitted). Thus, we have excused failure to exhaust administrative remedies in an "exceptional" case where "circumstances beyond [the litigant's] control" deprived him of a "fair opportunity" to exhaust his administrative remedies, and where "relevant new information" that could have permitted the litigant to exhaust his remedies came to his attention only after he sought relief in Superior Court. *Barnett v. District of Columbia Dep't of Employment Servs.,* 491 A.2d 1156, 1162 (D.C.1985) (quotation marks omitted).

But this is not such a case. To the contrary, there is every reason to believe that the "prescribed proceedings" would provide FOP "full redress." *Newman,* 518 A.2d at 708 (Rogers, J., concurring in part and dissenting in part) (arguing that common law cause of action survived passage of CMPA, but that complaint asserting that cause of action should have been dismissed for failure to exhaust administrative remedies). Moreover, "the futility doctrine is ordinarily confined to situations in which the agency lacks the power to address the central issue, such as the scope of its authority or a constitutional claim, or in which there is no reasonable chance that it will do so." *Id.* This case plainly does not

implicate those circumstances, and FOP does not argue otherwise. In short, insisting on exhaustion in this case does not "requir[e] [FOP] to go through obviously useless motions in order to preserve [its] rights." *Barnett,* 491 A.2d at 1162 (quotation marks omitted).

Nor are we persuaded by FOP's argument that exhaustion should not be required because "FOP's Motion is merely a *procedural* filing, not a substantive one." To begin, the distinction between procedure and substance is a bit artificial and elusive, and is not of much help in analyzing the exhaustion issue. *See Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,* — U.S. ——, 130 S.Ct. 1431, 1450, 176 L.Ed.2d 311 (2010) (Stevens, J., concurring) ("The line between procedural and substantive law is hazy, and matters of procedure and matters of substance are not mutually exclusive categories with easily ascertainable contents.") (citation and internal quotation marks omitted). Certainly, FOP's motion to confirm sought to effectuate an important "substantive" goal—to imbue the arbitration award with the force of a judgment. And one would be hard-pressed to argue that the Superior Court would have only procedural issues on its plate in deciding whether MPD failed to comply with the award. In any event, FOP fails to cite and we are unaware of any authority suggesting that the exhaustion doctrine does not apply to "procedural" filings. (FOP does cite *Feaster,* but that case concerned CMPA-preemption, not exhaustion. *See* 832 A.2d at 1281–86.) Last, FOP's argument that the purposes "of the CMPA were already accomplished *prior* to the FOP's filing of its Motion for Confirmation in Superior Court" is belied by the fact that, as catalogued above, the CMPA explicitly provides the Board with enforcement authority; we can only assume that the Council

intended the Board to use those powers in cases such as this one.

Finally, FOP's reliance on *District of Columbia Dep't of Corrections v. Teamsters Union Local No. 246*, 554 A.2d 319 (D.C.1989), is misplaced. FOP is correct that in that case we affirmed a Superior Court judgment ordering the Department of Corrections to comply with an award that arose under the CMPA. But *Department of Corrections* did not consider either the CMPA-preclusion or exhaustion arguments that we have addressed in this opinion. Consequently, that case does not inform or bind our decision today. *See Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717, 720 (D.C.1995) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quotation marks omitted). And in any event, *Department of Corrections* is readily distinguishable because in that case, after learning that the Department of Corrections would not comply with an arbitrator's award, the prevailing party went to PERB, asking it "to enforce the arbitration award or, in the alternative, that it authorize the union to sue directly." 554 A.2d at 322. Only after "two months went by without any word from the PERB in response to its request" did the prevailing party bring suit in Superior Court. *Id.* In this case, in contrast, FOP proceeded straightaway to Superior Court without attempting to exhaust its remedies with the PERB.

## V.

The Superior Court's order granting FOP's motion to confirm the award is reversed, and the case is remanded with instructions to dismiss FOP's motion. FOP, of course, is free to pursue its remedies before PERB.

*So ordered.*