*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-CV-937

ELLIOTTE PATRICK COLEMAN, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-401-11)

(Hon. Joan Zeldon, Trial Judge)

(Submitted October 12, 2012                      Decided December 12, 2013)

Elliotte P. Coleman, pro se, for appellant.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Donna M. Murasky*, Deputy Solicitor General, and *Mary L. Wilson*, Senior Assistant Attorney General, were on the brief for appellee.

Before OBERLY and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

MCLEESE, *Associate Judge*: Elliotte Coleman, who unsuccessfully applied for employment with the District of Columbia, claims that the District failed to follow applicable statutory and regulatory requirements when it considered his applications. We conclude that Mr. Coleman's suit is foreclosed by the

Comprehensive Merit Personnel Act (CMPA), D.C. Code § 1-601.01 et seq. (2012 Repl.).

## I.

For purposes of this appeal we assume the truth of the factual allegations in Mr. Coleman's amended complaint. In 2008, Mr. Coleman applied for several positions announced by the District of Columbia Department of Consumer and Regulatory Affairs (DCRA). Mr. Coleman was not selected for any of those positions. According to Mr. Coleman, DCRA acted unlawfully in making its selection decisions, by among other things "preselect[ing]" candidates and selecting less-qualified candidates without explanation. In making this claim, Mr. Coleman relies upon D.C. Code § 1-608.01 (a)(1) (requiring promulgation of regulations providing for "open competition for initial appointment to the Career Service"), regulations promulgated pursuant to the CMPA, and the D.C. Personnel Manual.

Mr. Coleman complained to officials at DCRA, to the District of Columbia Department of Human Resources, and to the Mayor, but according to Mr. Coleman they did not take appropriate remedial action.

Mr. Coleman then brought suit in Superior Court. The District moved to dismiss the suit, arguing that Mr. Coleman failed to state a claim and failed to exhaust his administrative remedies.[1] The Superior Court dismissed the suit without prejudice, concluding that Mr. Coleman failed to exhaust his administrative remedies, by failing to appeal DCRA's adverse hiring decisions to the Office of Employee Appeals (OEA). The Superior Court stated that OEA likely did not have jurisdiction to consider such an appeal, because Mr. Coleman was an applicant for employment rather than an employee. *See* D.C. Code § 1-606.03 (a) (permitting appeal to OEA by "employee"). Nevertheless, the Superior Court interpreted this court's decision in *Grillo v. District of Columbia*, 731 A.2d 384 (1999), to require Mr. Coleman to get a definitive ruling from OEA on the jurisdictional issue before filing suit in Superior Court.

---

[1] Where administrative remedies are available, an aggrieved person generally must exhaust those remedies before seeking judicial review. *See, e.g.*, *Barnett v. District of Columbia Dep't of Emp't Servs.*, 491 A.2d 1156, 1160 (D.C. 1985).

Mr. Coleman appealed to this court, but also filed an appeal with OEA challenging DCRA's hiring decisions. A Hearing Officer dismissed the appeal to OEA for lack of jurisdiction, relying on D.C. Code § 1-606.03 (a). Mr. Coleman apparently did not seek further review of that ruling.

In this court, Mr. Coleman argues that the Superior Court erred in holding that he failed to exhaust his administrative remedies. Mr. Coleman also renews his claim that the District failed to follow applicable statutory and regulatory provisions in making its hiring decisions. Reversing the position it had taken before the Superior Court, the District now concedes that Mr. Coleman exhausted the only administrative remedy available to him, by filing a grievance, and was not required to appeal the denial of his grievance to OEA. The District argues, however, that this court should nevertheless affirm the judgment of the Superior Court on the alternative ground that Mr. Coleman's suit is foreclosed by the CMPA.

We are not required to treat a party's concession as determinative of an issue that the Superior Court resolved in the party's favor. *Cf. Lawrence v. Chater*, 516

U.S. 163, 170-71 (1996) (Supreme Court "should not mechanically accept any suggestion from the Solicitor General that a decision rendered in favor of the Government by a United States Court of Appeals was in error") (internal quotation marks omitted). In the present case, we assume without deciding that Mr. Coleman was not required to appeal to OEA, and resolve the case on the alternative ground that Mr. Coleman's suit is foreclosed by the CMPA.[2]

## II.

Generally, those who are aggrieved by an unlawful action of the District government "may initiate an appropriate equitable action in the Superior Court to seek redress." *District of Columbia v. Sierra Club*, 670 A.2d 354, 359 (D.C. 1996) (internal quotation marks omitted). By statute, however, some actions taken by the District government or its agencies are reviewable in the first instance by this court rather than the Superior Court. *See, e.g.,* D.C. Code § 2-510 (a) (2012 Repl.).

---

[2] This court has consistently understood the question whether claims are foreclosed by the CMPA to go to the subject-matter jurisdiction of the Superior Court. *See, e.g.*, *District of Columbia v. American Fed'n of Gov't Emps., Local 1403*, 19 A.3d 764, 774 (D.C. 2011). The question whether Mr. Coleman's claims are foreclosed by the CMPA therefore is properly before us even if the District did not raise that specific question in the Superior Court. *See id.* at 771.

Although there is a "strong presumption" that agency action will be subject to judicial review, that presumption can be "rebutted by clear and convincing evidence of a contrary legislative intent." *Sitcov v. District of Columbia Bar*, 885 A.2d 289, 295 (D.C. 2005) (internal quotation marks omitted).[3] "Whether . . . a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *District of Columbia v. Thompson*, 593 A.2d 621, 632 (D.C. 1991) (on rehearing) (quoting *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984)). Similarly, "[w]hen a statute creating new rights and remedies does not expressly exclude common law remedies or declare new remedies exclusive, we decide whether such remedies remain available by looking initially at 'the purpose of [the statute], the entirety of its text, and the structure of review that it establishes.'" *Id.* (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)).[4]

---

[3] The Supreme Court has held that the requirement of "clear and convincing evidence" to rebut the presumption in favor of judicial review is not to be applied "in the strict evidentiary sense," and is met "whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 350-51 (1984) (internal quotation marks omitted).

[4] Foreclosing all judicial review of constitutional claims can raise additional issues. *See generally, e.g.*, *Ridder v. Office of Thrift Supervision*, 331 U.S. App. D.C. 94, 99, 146 F.3d 1035, 1040 (1998). Mr. Coleman does not raise

( continued…)

The District argues on appeal that the CMPA forecloses Mr. Coleman's suit challenging the District's hiring decisions. We agree.

## III.

The CMPA was enacted in response to perceived shortcomings of the District's preexisting personnel system, which the Council of the District of Columbia described as "disjointed, decentralized," "in disarray," and an "inefficient hodgepodge." *Thompson*, 593 A.2d at 632 (quoting D.C. Council, Report on Bill 2-10 at 24, 26 (July 5, 1978)). The CMPA was intended to replace that system with a "uniform" and "comprehensive merit personnel system." *Id.* at 632-33. *See also* D.C. Code § 1-601.02 (a) (purposes of CMPA include to "[c]reate uniform systems for personnel administration").

Although the CMPA focuses primarily on employees, several of its provisions relate to applicants for employment. *See, e.g.*, D.C. Code

(…continued)
constitutional claims.

§ 1-601.02 (a)(7) (CMPA intended to ensure District government has "means to recruit [and] select" "effective and responsive work force consistent with merit principles"); D.C. Code § 1-608.01 (a) (directing Mayor to promulgate regulations relating to merit selection for positions in career service).

In addition to its substantive provisions, the CMPA has detailed provisions addressing administrative and judicial review of agency actions relating to employment. In its current form, the CMPA provides that certain such actions may be challenged through a grievance process. D.C. Code § 1-616.52 (a) (reprimand or suspension of less than ten days may be contested as grievance); D.C. Code § 1-616.53 (a) (directing Mayor to issue rules and regulations providing procedures for prompt handling of grievance "of employees and applicants for employment"). *See also* 6-B DCMR §§ 845, 1630.1, 1631.1, 1699 (2013) (outlining circumstances in which applicants for employment can file grievances). More serious employment actions, such as removal, reduction in grade, or suspension for ten days or more, may instead be appealed to OEA. D.C. Code § 1-606.03 (a); D.C. Code § 1-616.52 (b).[5] The OEA's determinations are then subject to judicial review. D.C. Code § 1-606.03 (d).

---

[5] Before it was amended by the Omnibus Personnel Reform Amendment
( continued…)

The parties now appear to agree about the proper application of the express provisions of the CMPA: Mr. Coleman was permitted to file a grievance challenging at least some aspects of the District's decisions not to hire him, but the CMPA does not permit Mr. Coleman to obtain review by OEA of the denial of such a grievance.[6] Moreover, the CMPA does not expressly provide for judicial review of the denial of such a grievance. The parties disagree, however, about the further implications of these provisions. The District contends that Mr. Coleman has no judicial remedy, whereas Mr. Coleman contends that he was free to seek relief in Superior Court, invoking that court's general authority to direct agencies to conform their conduct to the requirements of the law. For the reasons that follow, we conclude that the strong presumption in favor of judicial review has been rebutted and that the CMPA forecloses Mr. Coleman's suit challenging the District's decisions not to hire him.

---

(…continued)

Act, D.C. Law 12-124 (June 10, 1998), the CMPA did not limit the types of complaints that could be raised through the grievance process, and permitted "any employee" to obtain review by OEA of final agency determinations, including denials of grievances. D.C. Code §§ 1-606.2 (a)(2), 1-606.3 (a), 1-606.3 (d) (1981).

[6] Mr. Coleman would not be permitted to file a grievance challenging his "nonselection from among a group of properly ranked and certified candidates." 6-B DCMR § 845.4 (2013).

## IV.

This court has not previously had occasion to decide whether the CMPA forecloses judicial review of a particular claim arising under the CMPA. The court has, however, decided numerous cases addressing a related question: whether the CMPA forecloses employees of the District from filing suit in Superior Court asserting various causes of action arising out of their employment. This court has frequently found that such suits are foreclosed by the CMPA, and that such employees are limited to the administrative and judicial remedies provided by the CMPA. *See, e.g.*, *District of Columbia v. American Fed'n of Gov't Emps., Local 1403,* 19 A.3d 764, 771-74 (D.C. 2011) (CMPA foreclosed labor union's action in Superior Court under Arbitration Act to enforce arbitration award against District); *Washington Teachers' Union, Local #6 v. District of Columbia Pub. Sch.*, 960 A.2d 1123, 1131-53 (D.C. 2008) (same as to challenge to discharge of school employees); *White v. District of Columbia*, 852 A.2d 922, 923-37 (D.C. 2004) (same as to claim of fraudulent misrepresentation); *Stockard v. Moss*, 706 A.2d 561, 564-67 (D.C. 1997) (same as to claim of slander); *District of Columbia v.*

*Thompson*, 593 A.2d 621, 625-36 (D.C. 1991) (on rehearing) (same as to claim of defamation and claim of intentional infliction of emotional distress).[7]

This court's previous decisions addressing whether the CMPA preempts other common-law or statutory claims do not directly resolve the issue currently before the court, for two principal reasons. First, in our previous decisions, the parties agreed that judicial review was available under the CMPA, whereas in this case the District argues that Mr. Coleman's claim is not subject to judicial review at all. Second, our prior cases involved the question whether the CMPA preempted a claim that arose from a separate source of substantive law, whereas in this case Mr. Coleman's claim arises under the CMPA itself.

---

[7] The CMPA does not foreclose claims arising under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq. (2012 Repl.), as well as claims that are "pendent" thereto. *See King v. Kidd*, 640 A.2d 656, 662-65 (D.C. 1994) (noting that regulations promulgated pursuant to CMPA exclude claims within jurisdiction of the District of Columbia Office of Human Rights). The court also held in *Newman v. District of Columbia*, 518 A.2d 698, 702-06 (D.C. 1986), that a police officer's suit against his supervisor for intentional infliction of emotional distress was not foreclosed by the CMPA's provisions relating to disability compensation. In *Thompson*, 593 A.2d at 625-36, however, the court concluded that such claims are implicitly foreclosed by the CMPA considered as a whole.

Our previous CMPA-preemption cases nevertheless provide important guidance. In those cases, the court has emphasized that the CMPA is a "comprehensive merit personnel system" intended to create a system of "efficient administration" that would give courts "a reviewing role . . . . as a last resort, not a supplementary role . . . as an alternative forum." *Thompson*, 593 A.2d at 632-34. The court also has expressed concern that permitting parties to "seek relief outside of the CMPA . . . would frustrate the [CMPA]'s aim to achieve order and efficiency." *District of Columbia Metro. Police Dep't v. Fraternal Order of Police/Metro. Police Labor Comm.*, 997 A.2d 65, 77 (D.C. 2010); *see also, e.g.*, *Thompson*, 593 A.2d at 634-35. Finally, in resolving CMPA preemption issues, the court has relied upon the Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439 (1988). *See District of Columbia Metro. Police Dep't*, 997 A.2d at 78-79; *Thompson*, 593 A.2d at 631 n.20, 632.

This court's reliance on *Fausto* is significant, because *Fausto* involved an issue comparable to the issue in this case. In *Fausto*, a former employee of the federal government brought suit in the United States Claims Court under the Back Pay Act, 5 U.S.C. § 5596, claiming that his dismissal was in violation of applicable regulations. 484 U.S. at 442-43. The federal government argued that the suit for back pay was implicitly precluded by the Civil Service Reform Act (CSRA)

(codified in various sections of 5 U.S.C.). 484 U.S. at 443. The Supreme Court agreed. *Id.* at 443-54.

The Court acknowledged that Mr. Fausto, who was a "nonpreference member of the excepted service," did not have a right under the CSRA to challenge his dismissal by taking an administrative appeal to the Merits Systems Protection Board, and thus also did not have a right under the CSRA to judicial review of his dismissal. *Id.* at 441 n.1, 444-46. Preclusion of his suit under the Back Pay Act therefore would leave Mr. Fausto with no judicial remedy. *Id.* at 448. Nevertheless, and even though no provision of the CSRA explicitly precluded suit under the Back Pay Act, the Supreme Court concluded that the CSRA, considered as a whole, supported an inference that such suits were precluded. *Id.* at 443-54.

The Court drew an inference of preclusion from four primary considerations. First, the Court emphasized the "comprehensive[]" nature of the CSRA. 484 U.S. at 443-44 (describing CSRA as "integrated system," intended to replace previous system that was "patchwork" and that reflected "haphazard arrangements for administrative and judicial review"). Second, the Court concluded that permitting direct judicial review of such personnel actions would frustrate the basic purposes

of the CSRA, which included channeling personnel issues through the expert administrative agency and avoiding multiple layers of judicial review. *Id.* at 451. Third, the Court reasoned that Congress's decision to exclude employees in Mr. Fausto's position from obtaining judicial review of their dismissals under the CSRA reflected a legislative determination that judicial review of such dismissals should be entirely unavailable. *Id.* at 447, 455. Fourth, the Court explained that interpreting the CSRA to permit suits like Mr. Fausto's suit would create irrational distinctions among classes of federal employees. *Id.* at 449-50 (explaining, for example, that probationary and "nonpreference excepted service employees" would be able to file suit in federal court to challenge minor adverse personnel actions, such as brief suspensions, even though more favored categories of employees, such as veterans, would not be able to obtain either administrative or judicial review of such actions).

The Supreme Court's analysis in *Fausto* is instructive in this case. First, as previously noted, the CMPA, like the CSRA, is a comprehensive government personnel system, designed to generally channel review of government employment decisions through an expert administrative agency.

Second, much as in *Fausto*, permitting unsuccessful job applicants to raise CMPA claims by filing suit directly in Superior Court would tend to run contrary to one of the basic purposes of the CMPA, which is "to provide for a centralized and organized personnel system." *American Fed'n of Gov't Emps, Local 1403*, 19 A.3d at 774. *See also District of Columbia Metro. Police Dep't*, 997 A.2d at 78 (permitting parties to "seek relief outside of the CMPA . . . would frustrate the [CMPA]'s aim to achieve order and efficiency").

Third, the CMPA, like the CSRA, has detailed provisions specifying the administrative and judicial review available under its statutory scheme. Specifically, the CMPA requires the issuance of regulations providing procedures for the prompt handling of grievances by employees and applicants for employment. D.C. Code § 1-616.53 (1). *See also* 6-B DCMR § 845.2, 845.4 (2013) (applicants for employment may file grievance concerning procedures used to identify and rank qualified candidates, but may not file grievance challenging non-selection from among group of properly ranked and certified candidates). The CMPA provides that certain agency decisions may be appealed to OEA, but the pertinent provisions expressly authorize appeal only by employees, not by applicants for employment, and also limit the types of agency decision that may be appealed. D.C. Code §§ 1-606.03 (a) ("employee" may appeal certain agency

actions to OEA), 1-616.52 (b) (specifying types of agency action that may be appealed to OEA). In broad outlines, the CMPA limits OEA review to more serious adverse actions, such as removal, reduction in force, reduction in grade, and suspension for ten days or more. *Id.* The CMPA also provides that an employee or agency may obtain judicial review of OEA decisions. D.C. Code § 1-606.03 (d). The CMPA does not expressly authorize unsuccessful job applicants to seek judicial review of claims arising under the CMPA.

We do not mean to suggest that, by themselves, the considerations just discussed establish a broad rule that employees or former employees of the District can obtain judicial review of their employment-related claims only if such review is expressly afforded by the CMPA.[8] We do conclude more narrowly, however, that Mr. Coleman's particular claim is not subject to judicial review. In reaching that conclusion, we rely on three features of Mr. Coleman's claim: Mr. Coleman is a job applicant, rather than an employee or former employee of the District; Mr. Coleman is seeking relief under the CMPA, rather than asserting a claim arising

---

[8] To the contrary, the court today holds that a police officer may obtain review in Superior Court of a determination of the Metropolitan Police Department regarding the officer's sick leave, even though such review is not expressly provided under the CMPA. *Nunnally v. District of Columbia Metro. Police Dep't*, No. 11-CV-609 (D.C. Dec. 12, 2013).

from a distinct substantive source of law; and Mr. Coleman's CMPA claim does not rest on a claimed violation of a concrete requirement of the CMPA, but rather relies primarily on claimed violations of regulations promulgated pursuant to the CMPA and the District's Personnel Manual. We have found no prior decision of this court taking jurisdiction over a comparable claim, either under the CMPA or outside of it. Moreover, federal courts considering analogous claims under the federal CSRA have found judicial review to be foreclosed. *See, e.g., Khaksari v. Chairman, Broad. Bd. of Governors*, 451 Fed. Appx. 1, *3 (D.C. Cir. Oct. 28, 2011) (job applicant's claim under federal Administrative Procedure Act was precluded by CSRA); *Taydus v. Cisneros*, 902 F. Supp. 288, 292-94 (D. Mass. 1995) (same; citing numerous cases).

## V.

Taken together, the foregoing considerations persuade us that the legislature did not intend that disappointed applicants for employment with the District would all be able to file independent actions in Superior Court claiming that the District's hiring decisions were in some respect contrary to regulation or to the District Personnel Manual. We therefore hold that the CMPA forecloses Mr. Coleman's

suit challenging the District's decisions not to hire him.[9]  The Superior Court's

order dismissing the case is therefore

*Affirmed.*

_____

[9]  Under the District of Columbia Home Rule Act, D.C. Code § 1-201.01 et seq. (2012 Repl.), the Council of the District of Columbia may not "[e]nact any act, resolution or rule with respect to any provision of Title 11 (relating to the organization and jurisdiction of the District of Columbia courts)."  D.C. Code § 1-206.02 (a)(4).  We asked the parties to file supplemental briefs addressing whether the Home Rule Act precluded the Council from foreclosing claims such as those raised by Mr. Coleman.  After consideration of those supplemental briefs, we conclude that the CMPA's foreclosure of claims such as Mr. Coleman's does not violate the Home Rule Act.

Although the foreclosure of a cause of action can certainly be said to affect the jurisdiction of the courts in a sense, both this court and the United States Court of Appeals for the District of Columbia Circuit have held that analogous changes to the substantive law are not precluded by the Home Rule Act.  *See Dimond v. District of Columbia*, 253 U.S. App. D.C. 111, 121-22, 792 F.2d 179, 189-90 (1986) (upholding statute that eliminated personal-injury tort claims for victims of car accidents who incurred less than $5,000 of medical expenses; "[a]lthough the partial abolition of a cause of action inevitably affects the cases a court adjudicates, this incidental byproduct does not amount to an alteration of the jurisdiction of the local and federal courts in violation of the [Home Rule] Act"); *District of Columbia v. Sullivan*, 436 A.2d 364, 365-68 (D.C. 1981) (upholding statute that decriminalized certain traffic offenses, thereby eliminating Superior Court's original jurisdiction over those offenses; Council had authority under Home Rule Act to "classify an act as a crime, or to decriminalize certain behavior"); *see also Umana v. Swidler & Berlin, Chtd.*, 669 A.2d 717, 724 n.15 (D.C. 1995) (concluding that D.C. Code § 1-147 (a)(4) (1978 Supp.), which is now codified as D.C. Code § 1-206.02 (a)(4), "does not . . . limit the Council's authority to enact or to alter the substantive law to be applied by the courts.  It simply means that the Council may not change the manner in which [T]itle 11 operates to prescribe the jurisdiction of the courts in administering those laws.") (citations omitted).