*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-0218

ROBERT GRIMES, APPELLANT,

v.

DISTRICT OF COLUMBIA,
BUSINESS DECISIONS INFORMATION INC.,
WELTON WILLIAMS, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CA-2009-9659)

(Hon. John M. Mott, Trial Judge)

(Argued December 4, 2013                    Decided April 17, 2014)

*Gregory L. Latimer*, with whom *Harold L. Levi* was on the brief, for appellant.

*Gregory M. Cumming*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on the brief, for appellee District of Columbia.

*Aaron L. Handleman*, with whom *Justin M. Flint* and *Shannon Chaudhry* were on the brief, for appellees Business Decisions Information Inc. and Welton Williams.

Before GLICKMAN, BLACKBURNE-RIGSBY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*: Appellant Robert Grimes seeks review of the Superior Court's dismissal of his claims against the District of Columbia, Business Decisions Information Inc. ("BDI"), and Welton Williams, BDI's Chief Operating Officer.[1] Mr. Grimes's claims arise from the District's hiring of BDI to investigate Mr. Grimes after Mr. Grimes sought disability benefits. We affirm.

## I.

In 1990, Mr. Grimes injured his back while working as a supervisory tax auditor for the District of Columbia Department of Finance and Revenue. Mr. Grimes filed a disability claim, which resulted in lengthy administrative proceedings. Mr. Grimes ultimately prevailed, and in 1998 the Employees Compensation Order Review Board awarded Mr. Grimes temporary total disability benefits.

The District's Officer of Risk Management terminated Mr. Grimes's disability benefits, based on evaluations conducted by independent medical examiners. Mr. Grimes challenged the termination of his benefits, and an ALJ

---

[1] We hereinafter refer to Business Decisions Information Inc. and Mr. Williams collectively as "BDI."

entered a compensation order concluding that Mr. Grimes remained entitled to disability benefits.

The District refused to pay some of the benefits due to Mr. Grimes under the compensation order. In support of its refusal, the District relied upon a report from BDI, which the District had hired to investigate Mr. Grimes's employment history and income. According to Mr. Grimes, BDI's report falsely said that from 1998 to 2007, while he was receiving disability benefits, Mr. Grimes also operated "Grimes & Associates, CPAs," where he earned income as an accountant. Mr. Grimes also asserts that the BDI report falsely accused him of earning income from real-estate investments and pursuing a personal-injury claim on behalf of his deceased father. Finally, Mr. Grimes states that the District and BDI published the report and its false information to other individuals "in the hope of generating other negative information."

In 2010, Mr. Grimes filed a complaint in Superior Court alleging that the District and BDI had conspired to discredit Mr. Grimes and prevent him from receiving disability benefits. Specifically, Mr. Grimes alleged (1) violations of the Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-601.01 et seq. (2012 Repl.); (2) conspiracy to violate his constitutional rights; (3) retaliation; (4)

intentional infliction of emotional distress ("IIED"); and (5) civil conspiracy. BDI moved to dismiss Mr. Grimes's complaint for failure to state a claim under Superior Court Rule of Civil Procedure 12 (b)(6). The District moved for judgment on the pleadings under Superior Court Rule of Civil Procedure 12 (c).

The trial court granted BDI's motion to dismiss and the District's motion for judgment on the pleadings. First, the court noted that Mr. Grimes had stipulated to a dismissal of the claim of conspiracy to violate his constitutional rights. Second, the court held that the CMPA foreclosed Mr. Grimes's remaining claims because Mr. Grimes had failed to plead administrative exhaustion. Third, the court found that Mr. Grimes had failed to state an IIED claim because Mr. Grimes had failed to plead facts showing "extreme and outrageous conduct" or "emotional distress." Fourth, the court concluded that Mr. Grimes had failed to state a claim for civil conspiracy because Mr. Grimes had not adequately pleaded an underlying tort.

## II.

Mr. Grimes makes two threshold arguments: (1) that the District's Rule 12 (c) motion was premature and (2) that the trial court analyzed the District's Rule 12 (c) motion and BDI's Rule 12 (b)(6) motion under the wrong standard.

We conclude that the trial court did not commit reversible error in considering the District's Rule 12 (c) motion and applied the proper standard in ruling on the motions.

**A.**

Rule 12 (c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Generally, "Rule 12(c)'s condition that the pleadings be closed requires that an answer have been filed . . . ." *Iannucci v. Pearlstein*, 629 A.2d 555, 558 (D.C. 1993). Mr. Grimes argues that the pleadings had not closed at the time of the trial court's dismissal order, because BDI had not answered Mr. Grimes's amended complaint. Mr. Grimes relies on *Iannucci*, where we said that a plaintiff's Rule 12 (c) motion was premature because the trial court had struck the defendant's answers. 629 A.2d at 558. But *Iannucci* is a single-defendant case, and Mr. Grimes sued multiple defendants (the District, BDI Inc., and Mr. Williams).

We have not directly addressed the question whether the pleadings are closed for purposes of a Rule 12 (c) motion if the moving defendant has filed an answer but one or more other defendants have not. Courts from other jurisdictions

are split on that question. *Compare, e.g.*, *Jung v. Association of Am. Med. Colls.*, 339 F. Supp. 2d 26, 36 (D.D.C. 2004) (considering Rule 12 (c) motion under Rule 12 (c) for defendants who answered and under Rule 12 (b)(6) for defendants who had not), *aff'd*, 184 F. App'x 9 (D.C. Cir. 2006), *with, e.g.*, *Watson v. County of Santa Clara*, No. C-06-04029, 2007 WL 2043852, at *1 (N.D. Cal. July 12, 2007) (denying Rule 12 (c) motion as premature because not all defendants had answered) (citing cases).

We need not decide whether the pleadings were closed for purposes of the District's Rule 12 (c) motion. Under Superior Court Rule of Civil Procedure 61:

> No error in . . . anything done or omitted by the Court . . . is ground for . . . vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the Court inconsistent with substantial justice. The Court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*See also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2884 (5th ed. 2012) ("Technical errors in pleading usually are treated as harmless and disregarded."). Even if the trial court erred in considering the District's motion under Rule 12 (c), we are satisfied that any error was harmless.

Although the District moved to dismiss Mr. Grimes's complaint under Rule

12 (c), the same substantive relief would be available under Rule 12 (b)(6). *See, e.g.*, *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 639 (D.C. 2005) (en banc) (same standard applies to motion to dismiss for failure to state claim under Rule 12 (b)(6) and motion for judgment on pleadings under Rule 12 (c)). Mr. Grimes has failed to show how the trial court's judgment would have been different had the court reviewed the District's motion under Rule 12 (b)(6). *Cf., e.g.*, *Jung*, 339 F. Supp. 2d at 35-36 ("No prejudice to any party results from treating a Rule 12(c) motion as a Rule 12(b)(6) motion because the standard of review for motions for judgment on the pleadings under Rule 12(c) . . . is essentially the same as that for motions to dismiss under Rule 12(b)(6)."); *Seber v. Unger*, 881 F. Supp. 323, 325 n.2 (N.D. Ill. 1995) (construing Rule 12 (c) motion as Rule 12 (b)(6) motion "[b]ecause [Rule 12 (c)] motion essentially serves the same purpose as a Rule 12(b)(6) motion"). In sum, even if the District's Rule 12 (c) motion was premature, any error in considering the motion under Rule 12 (c) rather than Rule 12 (b)(6) was harmless.

**B.**

Mr. Grimes also argues that the trial court should have considered the District's Rule 12 (c) motion and BDI's Rule 12 (b)(6) motion as motions for

summary judgment under Superior Court Rule of Civil Procedure 56, because discovery had closed and because the District and BDI had filed motions for summary judgment with supporting materials. We disagree.

Rules 12 (b)(6) and 12 (c) provide that if "matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." A trial court is not required to convert a Rule 12 (b)(6) or Rule 12 (c) motion into a motion for summary judgment, however, as long as the court does not consider matters outside the pleadings. *See, e.g.*, *In re Estate of Barfield*, 736 A.2d 991, 995 (D.C. 1999) (affirming trial court's grant of Rule 12 (b)(6) motion to dismiss, because court did not consider matters outside the pleadings); *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings."). *See also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (5th ed. 2012) ("As is true of practice under Rule 12(b)(6), it is well-settled that it is within the [trial] court's discretion whether to accept extra-pleading matter on a [Rule 12 (c)] motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).").

Here, the trial court did not consider matters outside the pleadings. First, the court's substantive analysis of Mr. Grimes's claims refers only to language from Mr. Grimes's complaint. Second, although the court discussed a court order from an earlier case between Mr. Grimes and BDI, court orders are not "matters outside the pleadings." *See Smith v. Public Defender Serv.*, 686 A.2d 210, 212 (D.C. 1996) (holding that "opinions and orders . . . do not constitute matters outside the pleading[s]") (internal quotation marks omitted). Third, the trial court's description of BDI's report in the procedural-history section of the dismissal order does not constitute consideration of matters outside the pleadings, because the trial court merely repeated the complaint's description of BDI's report. The trial court therefore was not required to treat the Rule 12 (c) and 12 (b)(6) motions as motions for summary judgment under Rule 56.

## III.

We now turn to the merits of Mr. Grimes's appeal. Under Rules 12 (b)(6) and 12 (c), we review de novo a trial court's dismissal of a complaint. *See Beretta*, 872 A.2d at 639. To survive a Rule 12 (b)(6) or 12 (c) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (internal quotation marks omitted). Pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth," and are insufficient to sustain a complaint. *Id.* But, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In this court, Mr. Grimes advances only his retaliation, IIED, and civil-conspiracy claims.[2] We uphold the trial court's dismissal of the complaint.

## A.

The trial court dismissed Mr. Grimes's retaliation claim on the ground that it was foreclosed by the CMPA. But if the complaint stated a viable claim of retaliation under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2–1401.01 et seq. (2012 Repl.), the CMPA would not foreclose that claim. *Coleman v. District of Columbia*, 80 A.3d 1028, 1033 n.7 (D.C. 2013) ("The CMPA does not foreclose claims arising under the . . . Human Rights Act."). We

---

[2] Mr. Grimes alleged in the complaint that the District violated unspecified provisions of the CMPA. Because Mr. Grimes did not brief that claim in this court, Mr. Grimes has abandoned the claim. *See Maupin v. Haylock*, 931 A.2d 1039, 1041 n.1 (D.C. 2007) (treating as "abandoned" claim made in complaint but not briefed on appeal).

nevertheless affirm the trial court's dismissal of the retaliation claim, because the complaint fails to state a DCHRA retaliation claim.[3]

The DCHRA prohibits an employer from retaliating against an employee because the employee has exercised a right granted or protected by the DCHRA. *See* D.C. Code § 2-1402.61 (a) (2012 Repl.). To survive a Rule 12 (c) or 12 (b)(6) motion, Mr. Grimes must allege: (1) that he engaged in statutorily protected activity; (2) that his employer took adverse personnel action against him; and (3) that a causal connection exists between the protected activity and the adverse action. *See Millstein v. Henske*, 722 A.2d 850, 853 (D.C. 1999). We conclude that Mr. Grimes failed to plead facts showing that he engaged in a protected activity.

Mr. Grimes identifies his protected activity as "the seeking of disability benefits in itself." The DCHRA protects employees from employer retaliation on

---

[3] We may affirm the trial court's dismissal on other grounds. *See National Ass'n of Postmasters of U.S. v. Hyatt Regency Wash.*, 894 A.2d 471, 474 (D.C. 2006) ("Where there will be no procedural unfairness, we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge or raised or considered in the trial court.") (internal quotation marks omitted). We see no unfairness in affirming on the ground that the complaint failed to state a DCHRA retaliation claim, because Mr. Grimes briefed that issue in this court and in the trial court. *See In re Walker*, 856 A.2d 579, 586 (D.C. 2004) (no procedural unfairness where appellant "has had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual and legal presentation with respect thereto").

the basis that the employee has "exercised or enjoyed . . . any right *granted or protected under this chapter.*"  D.C. Code § 2-1402.61 (a) (emphasis added). Seeking workers' compensation benefits is not a right "granted or protected" by the DCHRA.  *See* D.C. Code § 2-1402.11 (a)(1) (2012 Repl.) (DCHRA prohibits "discriminatory practice . . . based upon . . . race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual").  Put differently, filing a workers' compensation claim seeking disability benefits is not equivalent to filing a complaint alleging that an employer discriminated against an employee because of disabilities protected by the DCHRA.

We therefore agree with the federal courts of appeals that have held that the mere filing of a workers' compensation claim is not a protected activity under statutes analogous to the DCHRA.  *See, e.g.*, *Kendall v. Postmaster Gen. of U.S.*, 543 F. App'x 141, 144-45 (3d Cir. 2013) (per curiam) (filing workers' compensation claim not protected activity for purposes of retaliation claim under Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (2012)); *Reynolds v. American Nat'l Red Cross*, 701 F.3d 143, 154-55 (4th Cir. 2012) (filing workers' compensation claim not protected activity for retaliation claim under Americans

with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (2012)); *Jimenez v. Potter*, 211 F. App'x 289, 290 (5th Cir. 2006) (per curiam) (filing workers' compensation claim not protected activity for retaliation claim under Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2012)); *see generally Strass v. Kaiser Found. Health Plan of Mid-Atl.*, 744 A.2d 1000, 1008 n.8 (D.C. 2000) ("In determining the kind of proof required to prove [DCHRA] violations, this court has looked to cases decided under analogous federal statutes for guidance.").[4]   In sum, Mr. Grimes has not stated a retaliation claim under the DCHRA.[5]

---

[4]    Several unpublished district-court decisions have held that filing a workers' compensation claim was a protected activity under statutes analogous to the DCHRA, because other provisions of state law prohibited employers from retaliating against employees for filing workers' compensation claims. *See, e.g.*, *Names v. Lee Publ'ns, Inc.*, No. 09CV0132, 2009 WL 3008296, at *3 (S.D. Cal. Sept. 21, 2009) (filing workers' compensation claim was protected activity for purposes of retaliation claim under California Fair Employment and Housing Act, Cal. Gov't Code § 12900 et seq., because California Labor Code prohibited retaliation against employees for filing workers' compensation claim). We express no view as to whether those decisions are correct in the context of the specific provisions at issue in those cases. Under the express language of the DCHRA, protection against retaliation is limited to acts based on the exercise of rights granted or protected by the DCHRA.

[5]    Although we conclude that the DCHRA does not provide a remedy for retaliation against employees who seek workers' compensation benefits, other remedies may exist. For example, a District statute expressly prohibits retaliation against employees who file workers' compensation claims, *see* D.C. Code § 32-1542 (2012 Repl.), although that provision appears to be inapplicable to District employees, *see* D.C. Code § 32-1501 (9)(B) (2012 Repl.). Even in the absence of an express statutory protection, employees may have remedies if their employers retaliate against them for seeking workers' compensation benefits. *See,*

( continued…)

**B.**

We next turn to Mr. Grimes's argument that he has sufficiently stated IIED claims against the District and BDI. To state an IIED claim, a plaintiff must plead facts showing "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008). "Liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (internal quotation marks omitted), *amended by* 720 A.2d 1152 (D.C. 1998) (per curiam). We uphold the trial court's dismissal of Mr. Grimes's IIED claims.

---

(…continued)
*e.g.*, *Shick v. Shirey*, 716 A.2d 1231, 1232-38 (Pa. 1998) (common-law cause of action exists under Pennsylvania law against employer that discharges employee for filing workers' compensation claim).

**1.**

Mr. Grimes fails to state an IIED claim against BDI because Mr. Grimes has not alleged facts showing extreme and outrageous conduct. "In the employment context, we traditionally have been demanding in the proof required to support an [IIED] claim." *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997). In *Kerrigan*, we upheld the dismissal of an IIED claim, on the ground that the plaintiff did not allege sufficiently outrageous conduct, where the plaintiff claimed that his employer "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position." *Id.* *See also Williams v. District of Columbia*, 9 A.3d 484, 493-94 (D.C. 2010) (upholding dismissal of IIED claim on the ground that the plaintiff failed to allege sufficiently extreme and outrageous conduct, where plaintiff alleged that his employers' agents spread false rumors that employer terminated plaintiff for embezzlement).

Mr. Grimes's IIED claim rests on the allegation that BDI knowingly wrote a

false report suggesting that Mr. Grimes was not entitled to workers' compensation benefits and published that report to others. Like the plaintiff's allegations in *Kerrigan* that his employer targeted him for investigation, manufactured false evidence, and leaked that evidence to others, Mr. Grimes's allegations that BDI investigated him, wrote a false report, and published that report to others is conduct attributable to "employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct." *Kerrigan*, 705 A.2d at 628 (alterations in original and internal quotation marks omitted).

A plaintiff may state an IIED claim by alleging that the defendant caused the plaintiff to be falsely arrested. *See District of Columbia v. Tulin*, 994 A.2d 788, 801 (D.C. 2010) (evidence supported IIED claim based on defendant's role "in the sequence of events which ultimately led to [the plaintiff's] arrest and prosecution"). Mr. Grimes, however, has expressly acknowledged that his IIED claim is not based on a theory that BDI made and published its report for use in judicial proceedings against Mr. Grimes. Mr. Grimes's allegations are therefore more similar to the employer-employee conflict in *Kerrigan* than to the allegations that led to a false arrest in *Tulin*.

**2.**

The District argues that the CMPA forecloses Mr. Grimes's IIED claim against the District because the CMPA provides the exclusive remedy for Mr. Grimes's alleged injury. Generally, we would resolve that issue before turning to the merits of Mr. Grimes's IIED claim. *See Dean v. United States*, 938 A.2d 751, 769 (D.C. 2007) ("Before reaching the merits of an appeal, we must first determine whether we have jurisdiction to entertain it.") (internal quotation marks and brackets omitted); *Coleman*, 80 A.3d at 1030 n.2 ("This court has consistently understood the question whether claims are foreclosed by the CMPA to go to the subject-matter jurisdiction of the Superior Court.").

We nevertheless need not decide whether the CMPA foreclosed Mr. Grimes's IIED claim against the District. We have already decided that Mr. Grimes's amended complaint fails to state an IIED claim against BDI. Mr. Grimes's IIED claim against the District rests on the same factual allegations that form the basis of his IIED claim against BDI, and Mr. Grimes's IIED claim against the District fails for the same reason that his IIED claim against BDI failed: the complaint fails to allege actions that were sufficiently extreme and outrageous. Thus, in concluding that Mr. Grimes failed to state an IIED claim against the

District, we are not skipping over a "jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 98 (1998). Rather, we simply rely on our prior ruling in this case. *Cf. id.* at 98-99 (discussing *Norton v. Mathews*, 427 U.S. 524 (1976) (Supreme Court avoided jurisdictional issue because merits of claim had been resolved in companion case)).

## C.

Mr. Grimes has also failed to state a claim for civil conspiracy against the District and BDI. "Civil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007) (internal quotation marks omitted). Although Mr. Grimes argues that his civil-conspiracy claim is supported by his retaliation and IIED claims, we have upheld the trial court's dismissal of those claims. We therefore affirm the trial court's dismissal of Mr. Grimes's civil-conspiracy claim.

The judgment of the Superior Court is

*Affirmed.*