*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0607

JOHN T. MCFARLAND, APPELLANT,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF HUMAN RESOURCES AND
DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, APPELLEES.

Appeal from a Judgment of the
Superior Court of the District of Columbia
(2019-CA-008298-P(MPA))

(Hon. Robert R. Rigsby, Trial Judge)

(Argued December 17, 2024                    Decided March 21, 2025[*])

*David A. Branch* for appellant.

*Jeremy R. Girton*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellees.

Before BECKWITH and MCLEESE, *Associate Judges*, and GLICKMAN, *Senior Judge*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellee's motion to publish.

GLICKMAN, *Senior Judge*: Appellant John T. McFarland appeals from a Superior Court order denying (1) his petition for review of the denial of his request for a reclassification of his job with the Department of Consumer and Regulatory Affairs (DCRA) to a position with a higher pay grade, and (2) his motion for sanctions against the District of Columbia. We conclude that, by the terms of the Comprehensive Merit Personnel Act (CMPA), D.C. Code § 1-601.01 et seq., the Superior Court lacked jurisdiction to entertain McFarland's petition for review. We further conclude that McFarland has not shown that the Superior Court erred in denying his motion for sanctions.

**I.**

Between 2008 and 2022, McFarland was a Program Support Specialist with the DCRA.[1] This was classified as a Grade 9 position. In early 2011, he requested the District of Columbia's Department of Human Resources (DCHR) to conduct what was called a desk audit of his position because he believed it deserved a higher, Grade 11 classification.[2] The completion of the desk audit was significantly delayed

---

[1] In 2022, McFarland was transferred to the Department of Buildings, where he served at the time the briefs were filed. His change in employment has no dispositive effect on our decision.

[2] Grade 9 position descriptions typically include language indicating that they are supporting roles with limited discretionary authority. Grade 11 position descriptions reflect a delegation of independent authority. Illustratively, over

for a number of reasons, and the reviewer initially assigned to perform the audit, Peter Delate, was replaced by another classification specialist, Lewis Norman.[3] Norman completed the desk audit in October of 2013.[4] He concluded that McFarland's Grade 9 classification was correct and that the nature of McFarland's duties did not entitle him to a Grade 11 classification. McFarland appealed this decision to the Director of DCHR, who upheld it in 2014.

McFarland then petitioned for review in Superior Court, where he contended that Delate actually had completed his desk audit in 2011 and had supported a reclassification to Grade 11.[5] McFarland supported this contention only with email

---

employees in Grade 9 positions, the "supervisor maintains control through the review of the work," while Grade 11 employees are more independent and need only "confer[] with the supervisor on extremely controversial situations."

[3] It appears that Delate left DCHR before the audit was completed (though, as discussed below, McFarland disputes this). Apparently the desk audit also was delayed because McFarland did not attend scheduled meetings with his supervisor and DCHR to discuss his position description, and because he was assigned to an extended detail away from his role at DCRA during the pendency of the audit.

[4] Norman carried out the audit in accordance with the Administrative Analysis Grade Evaluation Guide developed by the Office of Personnel Management (OPM), utilizing its Factor Evaluation System (FES), which assigns points to the employee's various duties, responsibilities, and qualification requirements. As a rule, the District abides by OPM's classification system for its positions. *See* D.C. Code § 1-611.01(c); 6B D.C.M.R. § 1102.1.

[5] *McFarland v. Gov't of D.C. et al.*, No. 2014-CA-5775-P(MPA) (D.C. Super. Ct. Mar. 24, 2016).

correspondence he had exchanged with Delate, in which Delate told McFarland he "had completed [his] work [on the audit] and wrote it up," and that somebody would send "it back to [Delate] and then . . . to DCRA." However, the Superior Court affirmed DCRA's decision based on Norman's audit report, in part because there was no evidence that Delate's audit recommendation had been approved, nor any evidence "proving that [DCHR] deliberately withheld or otherwise engaged in misconduct resulting in omission of material evidence from the record." McFarland appealed the court's order to this Court and we affirmed in view of the substantial evidence in the record supporting DCHR's classification decision and McFarland's failure to produce the allegedly completed 2011 audit.[6]

In November 2017, McFarland filed another petition in Superior Court for review of his classification decision. In support, he relied on two documents prepared by Delate that he had obtained through a Freedom of Information Act request: a March 2011 memorandum in which Delate had opined that McFarland was "performing the duties" of a Grade 11 position, and a May 2011 document, titled "classification appeal decision," similarly concluding that McFarland was "working within the parameters" of Grade 11 (though "not well"). DCHR took the position

---

[6] *McFarland v. D.C. Dep't of Hum. Res.*, No. 16-CV-0399 (D.C. Feb. 16, 2017).

that these were merely predecisional drafts that had not been finalized before Delate left the agency and that had not been adopted or approved by DCHR as a final decision on the reclassification request. Among other things, the Delate documents did not evaluate McFarland's position in accordance with OPM guidelines and the FES factors. And the document entitled "classification appeal decision" did not appear to be final, as it had not been signed or approved by a supervisor as DCHR policy required. There is no indication in the record that DCHR adopted Delate's assessment.

The Superior Court, however, vacated DCHR's adverse decision on McFarland's reclassification request and remanded the matter for DCHR to reconsider its determination in light of the full record, including the newly discovered Delate documents, on the ground that those materials had been omitted from the record when DCHR originally had made and defended its decision.[7]

On remand, DCHR assigned a new specialist who had no previous involvement in McFarland's case to review the entire record. This review was completed in November 2019. It concluded that Delate had not performed a proper audit of McFarland's position in 2011 in accordance with classification standards;

---

[7] *See McFarland v. D.C. Dep't of Hum. Res.*, 2017-CA-007722-P(MPA) (D.C. Super. Ct. Sept. 17, 2019).

that Norman's subsequent audit in 2013 was properly performed; and that McFarland's position was classified properly at Grade 9. DCHR adhered to this conclusion.

McFarland then again petitioned for review in Superior Court. In addition to seeking relief from DCHR's decision to uphold his Grade 9 classification, McFarland asked the court to sanction the District for (allegedly) having falsely represented in the prior litigation that Delate had not completed his desk audit before he left DCHR. However, in making this latter request, McFarland did not specify any particular false statements that the District allegedly had made, nor did he cite legal authority for the imposition of a sanction or specify the sanction he sought.

The Superior Court denied McFarland's petition and affirmed DCHR's continuing Grade 9 classification of McFarland's position.[8] The court held that DCHR had properly reviewed all the materials in the expanded administrative record on remand, including the newly discovered documents, and had reached reasonable conclusions that Delate had not followed established classification procedures, that Norman had done so properly in his analysis, and that McFarland's position was

---

[8] *McFarland v. D.C. Dep't of Hum. Res.*, 2019-CA-008298-P(MPA) (D.C. Super. Ct. June 22, 2023).

properly classified as Grade 9. The court also denied McFarland's request for sanctions against the District, holding that it was vague and lacked legal support.

McFarland then took the present appeal to this Court.

## II.

We turn first to the District's argument that, under the CMPA, the Superior Court lacked jurisdiction over McFarland's petition for review because the classification decision at issue did not reduce McFarland's position grade. Because we agree with the District on this point, we do not reach its alternative argument that DCHR's Grade 9 classification ruling deserves to be upheld on its merits.[9]

What we have called the "strong presumption" that District agency actions are subject to judicial review[10] is not conclusive; the presumption is overcome when the legislature's "intent to preclude judicial review is fairly discernible in the statutory scheme."[11] "Whether . . . a particular statute precludes judicial review is determined

---

[9] Although the District raises its jurisdictional objection for the first time on appeal, "[l]ack of subject matter jurisdiction is not waivable and may be raised at any time." *Long v. United States*, 940 A.2d 87, 99 (D.C. 2007).

[10] *District of Columbia v. Sierra Club*, 670 A.2d 354, 358 (D.C. 1996).

[11] *Coleman v. District of Columbia*, 80 A.3d 1028, 1031 n.34 (D.C. 2013) (quoting *Block v. Cmty Nutrition Inst.*, 467 U.S. 340, 350-51 (1984)).

not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."[12] As explained in *Coleman*, relevant considerations include (1) the "comprehensive nature" of the underlying statute,[13] (2) whether direct judicial review would frustrate the basic purposes of the statute,[14] (3) whether the legislature's decision to exclude employees from obtaining judicial review reflects a legislative determination that judicial review should be entirely unavailable,[15] and (4) whether such suits would create irrational distinctions among classes of employees.[16]

These considerations strongly persuade us that the Council of the District of Columbia intended the CMPA to preclude judicial review of agency classification

---

[12] *Id.* at 1031 (quoting *District of Columbia v. Thompson*, 593 A.2d 621, 632 (D.C. 1991)).

[13] *Id.*, 80 A.3d at 1033 (internal quotation marks and brackets removed).

[14] *Id.* at 1034; for example, the deliberate "channeling [of] personnel issues through the expert administrative agency [in order to] avoid[] multiple layers of judicial review." *Id.*

[15] *Id.*

[16] *Id.*

decisions that (like the decision in this case) do not involve a reduction in grade—a determination that deprives the Superior Court of subject-matter jurisdiction.[17]

To begin with, as its name expressly states, the CMPA is designed to be comprehensive in its coverage of District government employment; we have recognized repeatedly that, "[w]ith few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind."[18] McFarland's complaint does not come within any exception to that general rule, nor has he identified any exception that might apply to his case. And while the CMPA as originally enacted did provide a specific path for public employees to obtain judicial review of classification decisions—a dissatisfied employee could appeal DCHR's decision to the Office of Employee Appeals and then to the Superior Court[19]—the Council later chose to cut back on

---

[17] *Id.* at 1030 n.2 ("This court has consistently understood the question whether claims are foreclosed by the CMPA to go to the subject-matter jurisdiction of the Superior Court.").

[18] *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000).

[19] D.C. Law 2-139, §§ 603(a), (d), 1102(c) (formerly codified at D.C. § 1-606.3(s), (d), 1-611.02(c)).

that path and render appellate review unavailable in cases, like this one, where the classification determination did not reduce the employee's grade.

The Council took this action in 1998, when it enacted the Omnibus Personnel Reform Amendment Act of 1998 (the "Omnibus Act")[20] to amend the CMPA and "streamline" its procedures.[21] The Omnibus Act removed non-grade reduction classification decisions (as well as other minor work-related grievances) from the list of proceedings that could be appealed to the OEA and then to Superior Court.[22] In doing so, the Omnibus Act limited the right to appeal to decisions involving "a removal, a reduction in grade, or suspension of 10 days or more."[23] As explained in the report on the bill that became the Omnibus Act, the Council took this action because the avalanche of appeals from "minor adverse actions and grievances" had created a "backlog of such cases" and "interfer[ed] with the agency's ability to

---

[20] D.C. Law 12-124 (June 10, 1998).

[21] D.C. Council, Report on Bill 12-44 at 1 (January 6, 1997) (hereinafter, "Report on Bill 12-44").

[22] D.C. Law 12-124, § 101(d)(1) (amending D.C. Code § 1-606.3(a)); *see also id.*, § 101(n)(1) (repealing a provision of the CMPA that had guaranteed employees the right to appeal classification decisions to the OEA); *see also Coleman*, 80 A.3d at 1032 n.5.

[23] *Id.*, § 101(d)(1) (amending D.C. Code § 1-606.3(a)), § 101(s) (amending D.C. Code § 1-616.52(b)).

decide appeals from more major actions in an expeditious manner."[24] And as the report stated, the Council amended the CMPA with the express intent that "[e]mployees will . . . no longer have a venue for contesting classification matters other than a negotiated grievance and arbitration procedure."[25]

DCHR's adverse decision on McFarland's challenge to his Grade 9 position classification did not result in a reduction in grade (nor, of course, in McFarland's removal or suspension). We therefore deem it clear that allowing his appeal of that decision to the Superior Court would frustrate one of the basic purposes of the Omnibus Act's amendment of the CMPA and run afoul of the Council's intent that appeal of such decisions should be entirely unavailable.[26]

Accordingly, we hold that the Superior Court lacked subject matter jurisdiction over McFarland's suit challenging his non-grade reduction classification

---

[24] Report on Bill 12-44 at 13.

[25] *Id.* at 15. Reflecting its understanding of the Council's intent in amending the CMPA, DCHR later amended its regulations to state explicitly that "[e]xcept when a classification decision results in a reduction in grade, the Director's decision on a classification appeal shall be final and not subject to further administrative or judicial review." *See* DCHR, Notice of Final Rulemaking, 69 D.C. Reg. 10,387, 10,388 (Aug. 12, 2022); 6B D.C.M.R. § 1110.5.

[26] Furthermore, allowing judicial review of non-grade reduction classification decisions without prior OEA review—which is what McFarland seeks in the present case—would, in our view, create an irrational distinction between classes of

on its merits as violative of the CMPA and its implementing regulations because the CMPA forecloses such lawsuits.[27]

## III.

We turn to McFarland's contention that the Superior Court should have sanctioned the District at his request for making false representations in the prior litigation in which he unsuccessfully challenged the denial of his reclassification

---

employees. As we have noted, while the Omnibus Act precluded OEA review of non-grade reduction classification decisions, the OEA retains jurisdiction to "review . . . more serious adverse actions, such as removal, reduction in force, reduction in grade, and suspension for ten days or more." *Coleman*, 80 A.3d at 1034 (citing D.C. Code §§ 1-606.03(a), 1-616.52(b)). The OEA's decisions in those cases can *then* be appealed to Superior Court. D.C. Code § 1-606.03(d). Allowing claimants like McFarland to obtain judicial review of non-grade reduction classification decisions directly, without first going to the OEA, would have the seemingly counterintuitive effect of prioritizing the minor personnel grievance cases over more serious ones by accelerating their access to the courts. And given the Council's concern that the volume of appeals in such minor cases was clogging the system, it is difficult to conceive that the Council meant to shift the burden of dealing with those appeals directly and exclusively onto the Superior Court. Certainly nothing in the legislative history or the language of the Omnibus Act suggests such an intent.

[27] For clarity's sake, we note that our holding is limited to appeals directly challenging the classification decision under the CMPA. We do not address appeals complaining that a classification decision was made in violation of other law—for example, as a discriminatory or retaliatory action taken in violation of the D.C. Human Rights Act, D.C. Code § 1-2501 et seq.; *see Coleman*, 80 A.3d at 1033 n.7 ("The CMPA does not foreclose claims arising under the District of Columbia Human Rights Act, . . . , as well as claims that are 'pendent' thereto."). McFarland has not made any such claim.

request.[28]   It is not clear whether McFarland claims that the court should have sanctioned the District in accordance with Super. Ct. Civ. R. 11 or pursuant to the court's inherent authority.   Either way, our review is for abuse of discretion.[29] McFarland has not shown such abuse.

At the trial level, McFarland cited no legal authority in support of his motion for sanctions, did not describe the specific conduct that allegedly called for sanctioning, and did not request any particular sanction for the (insufficiently) alleged misconduct; nor did he comply with the procedural requirements for seeking sanctions set forth in Rule 11.   He likewise did not invoke the court's inherent powers.   Much the same is true on appeal as well; McFarland has failed to identify any errors in the Superior Court's denial of sanctions.

Most fundamentally, McFarland has made no specific or sufficient allegations that the District acted in bad faith or otherwise improperly.   At most, McFarland has asserted that the District made unspecified false statements in prior proceedings to the effect that Delate did not complete his desk audit of McFarland's position—

---

[28] The Superior Court had jurisdiction to entertain the request for sanctions, which did not turn on the availability of judicial review of the classification determination.

[29] *See, e.g.*, *In re S.U.*, 292 A.3d 263, 269 (D.C. 2023).

statements purportedly belied by the two documents that McFarland obtained by his FOIA request. But as discussed above, the record does not even show that such representations, if made, were in fact false, let alone that the District acted in bad faith. On the contrary, if anything, the record before us supports the District's view that the two documents on which McFarland relies were indeed predecisional memoranda that DCHR never adopted (and for legitimate reasons, namely, that Delate did not comply with the agency's classification review procedures and standards).

For these reasons, we cannot conclude that the trial court abused its discretion in declining to sanction the District for having (allegedly) made false representations in the prior cases.

## IV.

For the foregoing reasons, we affirm the Superior Court's denial of sanctions and remand for the court to dismiss the petition for review for lack of jurisdiction.

*So ordered.*